388 So.2d 699 (1980)
STATE of Louisiana
v.
Rickey LANDRY.
No. 67011.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
*700 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Ross Brupbacher, Asst. Dist. Atty., for plaintiff-appellee.
Clement Story, III, Lafayette, for defendant-appellant.
*701 DIXON, Chief Justice.
The defendant was convicted of second degree murder in violation of R.S. 14:30.1,[1] and sentenced to serve life in prison without benefit of probation, parole or suspension of sentence for a period of forty years. On appeal, defendant urges eleven assignments of error.
Testimony adduced at trial indicates that the defendant, along with two other white men, Vincent Gautreaux and Tim Darby, were at Romero's (or Rome's) Amusement Center on the afternoon of March 2, 1978. Two black men, Charles Alfred and Randy Collins, attempted to enter the establishment but were confronted by the defendant, who told Collins that he could not bring the beer he was carrying into the building. A fight ensued between Collins and the defendant, which developed into a battle involving all five men. One of the white men brought out a knife, causing the black men to attempt to flee. Colins was not pursued, but Alfred was caught in the back yard of a nearby house by the defendant, who held him until the other two arrived. The three men then took turns stabbing Alfred with a knife, while the other two men held him. Alfred was able to escape for a brief moment, but was again caught and slashed in the face, either by the defendant or by Gautreaux. Alfred subsequently died of a knife wound to the heart.

Assignment of Error No. 1
At trial, Mark Glynn testified that he saw the defendant slash the victim in the face. On cross-examination, defense counsel sought to impeach that testimony by reference to a statement by the witness given to the police indicating that Vincent Gautreaux, and not the defendant, had caused the wound on the victim's face. The trial court initially refused to allow counsel to continue, because it felt he had failed to lay a proper foundation and because he did not have a copy of the complete statement. The court issued a subpoena for the statement, and the prosecutor offered to provide a complete copy. When trial resumed the next day, defense counsel confronted the witness with the existence of the statement contradicting his testimony at trial. The witness admitted making the statement to the police, and explained that he had been confused the day before in court, and that the wound on the victim's face had been in fact inflicted by Gautreaux.
In this assignment of error the defendant argues that the witness' statement was exculpatory evidence which was improperly withheld despite his pretrial request for all such material. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Evidence that impeaches the testimony of a witness whose reliability may be determinative of guilt may fall within the Brady rule requiring the state to disclose material exculpatory evidence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Roussel, 381 So.2d 796 (La.1980); State v. Bailey, 367 So.2d 368 (La.1979). In the instant case, however, it is doubtful that the statement given by Glynn to the police had any exculpatory value prior to trial, since it was not until the witness had testified in a conflicting manner at trial that the value of the statement for impeachment came into existence. Even if, for purposes of argument, some exculpatory value be attributed to the evidence, it cannot be said to have been suppressed by the state, since it was made available to the defendant for use at trial. See State v. Reed, 378 So.2d 923 (La.1979).
*702 In addition, although this court has noted that the late disclosure, as well as the nondisclosure, of exculpatory evidence can so prejudice a defendant that he is deprived of his constitutional right to a fair trial (State v. Roussel, supra; State v. Manning, 380 So.2d 46 (La.1980)), there was no such deprivation in the instant case. The record indicates that the defendant had ample opportunity to use the prior statement for impeachment purposes, and in fact did so in a thorough manner. The impeaching material was effectively presented to a jury. The record does not reflect that the defendant was prejudiced by the fact that he had to delay impeachment from the end of one day to the beginning of the next.
In a similar vein, the defendant contends that the state also suppressed the fact that a state witness had been arrested in connection with the offense, a fact which the defendant argues would have been useful in impeachment of the witness. To show that the witness had been arrested the defendant relied on a document purporting to be a form listing and waiving the "Rights of an Arrestee or Suspect." The document does not specify whether the witness was arrested or simply questioned as a suspect. And, as in the case of the statement given by Mark Glynn, the record indicates that the form was actually used at trial, and any exculpatory value it may have had was actually put before the jury. The record fails to show any prejudice whatsoever from the failure of the state to provide the defendant with the information involved. The defendant was therefore not deprived of his right to a fair trial.
In addition, the defendant's contention that the state had several statements in its possession that might have been exculpatory, and that the defendant should have been given those statements, has no merit. The defendant has failed completely to show that any such statements existed, or that any such statements were material to the case and exculpatory. Brady v. Maryland, supra; United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Assignments of Error Nos. 2 and 9
In these assignments the defendant cites numerous instances in which he claims the prosecutor made improper remarks.[2]
Before the start of the defendant's trial, when numbers were being called from the docket, one of the assistant district attorneys present inquired, in a low voice, "Is this the Receiving Stolen Goods?" The statement was made in the presence of the general venire that had been called for trial, but it is unclear if any of its members heard the remark. The defense moved to dismiss the entire venire, apparently on the grounds that the defendant had been prejudiced by the prosecutor's remark. The defendant declined to question the prospective jurors to determine if they had in fact heard the remark, and also declined the court's offer to instruct the venire to disregard the remark.
On the record before us it was not error for the trial court to deny the defendant's motion to dismiss the entire venire. The trial court, in discussion out of the presence of the venire, indicated that it did not believe that any member of the venire had heard the remark, and that, if any member had heard the remark, it did not believe he would have connected the question to the defendant. The small likelihood of prejudice was recognized by the defendant when he declined the opportunity to prove any prejudice or to have the venire instructed. Therefore, the record does not reflect any prejudice to the defendant that would require the dismissal of the entire venire.
In another instance cited by the defendant, the following discussion took place after the defendant had presented his evidence:
"BY MR. STORY: Your Honor, at this time the defense will rest.
BY THE COURT: ANY REBUTTAL?
*703 (INAUDIBLE STATEMENT BY MR. BRUPBACHER)
BY MR. STORY: OBJECTION.
BY THE COURT: You need five minutes now?
BY MR. BRUPBACHER: No, sir. Well, that is a surprise, Judge.
BY THE COURT: ANY REBUTTAL?
BY MR. BRUPBACHER: No rebuttal by the State, Your Honor."
The trial then proceeded in its normal course. The defendant claims that, where the transcript indicates an inaudible statement was made, the prosecutor in fact said, "Your Honor, we are surprised. I thought he had more evidence than this." In brief to this court the state concedes that some such statement was made, but it was not in fact heard by the jury.
Even if it is assumed that the contrary is true, the record before us does not present reversible error. The remark made by the prosecutor does not fall within the grounds for a mandatory mistrial under C.Cr.P. 770, nor did the statement amount to conduct making it "impossible for the defendant to obtain a fair trial" such as would be grounds for a mistrial under C.Cr.P. 775. In fact, the statement does not appear to have been an attempt by the prosecutor to comment on the defendant's evidence (or the lack of it), but was rather made in a procedural context as an explanation of the prosecutor's momentary indecision as to whether to put on any rebuttal evidence. In addition, even if the remark is construed as a comment on the defendant's evidence, the defendant was not unduly prejudiced thereby. C.Cr.P. 774 provides that argument can be directed to the lack of evidence on any issue. This court has held that it is proper for a prosecutor to comment on the defendant's failure to controvert or rebut the state's case. State v. Sims, 346 So.2d 664 (La.1977); State v. Reed, 284 So.2d 574 (La.1973). It was not unduly prejudicial to the defendant that, as an incident to a procedural colloquy between the court and the prosecutor, the jury's attention was attracted to a matter that could properly have been argued to it by the prosecutor.
Another claim made by the defendant involves the defense cross-examination of Randy Collins, who had been involved in the fight which ultimately resulted in the killing. The witness testified that the victim had struck one of the white men with a cane, but he could not be certain that it was the defendant who had been hit. Defense counsel nevertheless assumed, for purposes of further questioning, that the defendant had been struck. The prosecutor stated that he did not believe that the witness had so testified. Discussion between defense counsel and the prosecutor resulted in the prosecutor telling counsel not to trick the witness or put words in his mouth. A defense objection to the prosecutor's statement was overruled.
There was no error in the trial court's action, because the prosecutor's remarks, while perhaps ill phrased, were not improper under the circumstances. The prosecution was attempting to put before the court its objection to the substance and form of the defendant's questioning of the witness. C.Cr.P. 841 requires that an objecting party state the basis for his objection. In this effort the prosecutor was seeking to prevent defense counsel from assuming answers had been given that had not in fact been given, a practice prohibited by R.S. 15:278. Therefore, there was no error when the trial court overruled the defendant's objection to the prosecutor's remarks.
These assignments lack merit.

Assignment of Error No. 3
In this assignment the defendant contends that the trial court improperly admitted into evidence allegedly gruesome photographs of the deceased showing the wounds he sustained.
Before allegedly gruesome photographs may be admitted into evidence, their probative value should outweigh their prejudicial effect on the jury. A trial court's ruling in this regard will only be disturbed if the prejudicial effect of the photographs clearly outweighs the probative value. State v. Unger, 362 So.2d 1095 (La.1978); *704 State v. Bryant, 351 So.2d 1188 (La.1977). Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Valentine, 364 So.2d 595 (La.1978).
In the instant case, two photographs were admitted, one depicting a gash on the victim's face, and the other showing the location of wounds on the victim's torso. The defendant argues that they were not relevant because he stipulated as to the identity of the victim, and the cause of his death, two facts which are often shown by the use of photographs. The existence of such a stipulation necessarily bears upon a balancing of the probative value of the photographs against their prejudicial effect; nevertheless, the decision remains one for the trial court. State v. Sterling, 377 So.2d 58 (La.1979).
The photographs of the victim clearly show the location and severity of the wounds he sustained. That evidence is relevant to show intent to kill or inflict great bodily harm. The photographs were thus relevant to an issue not stipulated to by the defendant, and had a probative value that overcame any possible prejudicial effect on the jury. The trial court did not err in admitting the photographs.
This assignment of error lacks merit.

Assignment of Error No. 4
By this assignment the defendant complains of the admission into evidence at trial of a pocket knife found on his person at the time of his arrest.
Before demonstrative evidence can be admitted into evidence it must be shown that, more probably than not, the evidence is connected to the case. That foundation can be laid by establishing a chain of custody of the evidence, or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Drew, 360 So.2d 500 (La.1978).
In the present case it was error for the court to admit into evidence the defendant's pocket knife. The state did not prove that, more probably than not, the knife was used in the killing. All of the witnesses who testified who described the knife indicated that the weapon used was a long, folding "buck" knife, estimated by one witness to be from eight to ten inches long. The parish coroner testified that the wound from which the victim died was inflicted by a blade at least five to six inches in length.
The danger in admitting evidence not shown to be connected to the case is that the jury will infer such a connection from a mere viewing of the evidence, although that connection is not proved. State v. Davis, 336 So.2d 805 (La.1976). In State v. Manieri, 378 So.2d 931 (La.1979), this court noted that the trial judge flirts with prejudicial error when he allows such evidence to be introduced. As in Manieri, however, reversible error did not occur under the facts of the instant case. The jury heard testimony that the killing was done with a large "buck" knife. There was no attempt made to connect the knife found on the defendant with the killing. No attempt was made to exploit the admission of the knife in argument by the prosecutor. Therefore, there was little possibility that the jurors formed an inference that the knife was associated with the victim's death. In the absence of any such prejudice to the accused, the admission of the knife taken from the defendant at the time of his arrest was not reversible error. C.Cr.P. 921.

Assignments of Error Nos. 5 and 6
The defendant complains that in opening argument by the state, and by the trial court's instruction to the jury, the jury was informed that second degree murder, the crime for which the defendant was convicted, encompassed the killing of a human being when the perpetrator has the specific intent to kill or inflict great bodily harm. He argues that the applicable law did not define such conduct as second degree murder. In a related argument he contends that the statute under which he had been charged had been declared unconstitutional, *705 and that therefore his motion to quash should have been granted.
Both arguments are wholly without merit. At the time of the killing R.S. 14:30.1, relative to second degree murder, provided in part:
"B. The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure."
That statute clearly includes a homicide when the offender has a specific intent to kill. See State v. Payton, 361 So.2d 866 (La.1978), where, in addition, this court rejected an attack on the constitutionality of R.S 14:30.1 as it existed in 1978. Therefore, there was no error in the trial court's instruction to the jury or in its denial of the defendant's motion to quash.
These assignments of error lack merit.

Assignments of Error Nos. 7 and 8
By these assignments the defendant urges error in the trial court's refusal to admit evidence of allegedly exculpatory statements made by Vincent Gautreaux and Tim Darby. The evidence was objected to by the state on the ground that it was hearsay. One of the items of evidence involved was a copy of a transcript of an interview of a police officer who had overheard Gautreaux tell the defendant's counsel that the defendant had nothing to do with the stabbing of the deceased. The defendant claims that the transcript was used in Gautreaux' trial. The other item was a copy of a document filed by the state in the prosecution of Tim Darby, in which the state gave Darby notice of its intention to use an inculpatory statement he had made against him.
Each item of evidence contained a statement by one of the defendant's accomplices which the defendant intended to use for its exculpatory value. The defendant was therefore attempting to introduce evidence of out-of-court statements to prove the truth of matters asserted in those statements. In each case the value of the evidence rested on the credibility of the out-of-court asserter (the defendant's accomplices) for its value. The evidence therefore falls within the definition of hearsay used by this court. State v. Martin, 356 So.2d 1370 (La.1978).
In arguing that the evidence should have been admitted, the defendant relies on R.S. 15:459 and R.S. 13:3723. The former statute provides:
"Whenever, during the trial of any criminal case, either party may desire to offer in evidence any record, paper or document belonging to the files or records of the court in which the trial is proceeding, the presiding judge shall, at the request of such party, direct the clerk to produce such record, document or paper, in order that the same may be used in evidence; and it shall not be necessary for the clerk in any such case to make a copy of such record, document or paper."
R.S. 13:3723 essentially repeats those provisions and extends them to apply to civil as well as criminal cases. As can be seen, the statutes simply provide a mechanism whereby a party seeking to make evidentiary use of a record, paper or document already in the court's files or records can do so without the necessity of obtaining a copy of the paper, record or document to be introduced. The party need only, under the statutes, request that the court instruct the clerk to produce the original. The statutes are therefore designed for the convenience of the parties in the production of evidence, but make no mention of the admissibility of such evidence after it is produced by the clerk.
In determining whether a statute creates an exception to the rule that hearsay evidence must be excluded, this court has looked to see if the legislature has made such an exception in express terms. See, State v. Martin, supra. That inquiry is consistent with the legislature's mandate that hearsay is inadmissible "except as otherwise provided in this Code," R.S. 15:434, *706 and with the requirement that an exception to the hearsay rule provide some circumstantial probability of trustworthiness to take the place, as far as possible, of cross-examination. State v. Martin, supra.
The statutes involved in the instant case certainly do not, by their express terms, provide for an exception to the hearsay rule. Nor do they give any guarantee that all evidence in the court's files or records is trustworthy. In short, the statutes provide no indication that the legislature intended to create a broad exception to the hearsay rule by their enactment.
Since the evidence sought to be introduced was hearsay, and did not fall within any recognized exception to the rule that such evidence must be excluded, the trial court did not err in refusing to allow its admission.[3]
These assignments of error lack merit.

Assignment of Error No. 10
By this assignment the defendant argues that the state failed to prove his guilt as a principal in the killing of Charles Alfred. That argument is based in turn on the defendant's contention that although he may have been involved in a fist fight with the deceased, he had no knowing part in the use of a knife against the victim.
This argument is contrary to the evidence adduced at trial, which provided an ample basis for the jury to conclude that the defendant was guilty of the crime charged.[4] Mark Glynn and Chad Romero both testified that they observed the defendant stab the victim with a knife at least once. The photographs of the wounds introduced by the state show clearly that each of the stab wounds received by the victim reflected an intent on the part of his attackers to inflict at least great bodily harm. The record also indicates that the victim was stabbed by each of his assailants in turn, while the other two prevented his escape. It matters not whether the defendant actually wielded the knife for the fatal blow, or whether he simply held the victim while his cohorts stabbed him. In either case, his actions would fall under the definition of principals, which provides that "[a]ll persons concerned in the commission of a crime, ... whether they directly commit the act constituting the offense, [or] aid and abet in its commission ... are principals." R.S. 14:24. Since the jury was presented with evidence that the defendant had himself stabbed the deceased with a knife, and held the victim while his accomplices also stabbed him, the state did not fail to present sufficient evidence to support the jury's verdict of guilty.
This assignment of error lacks merit.

Assignment of Error No. 11
By this assignment the defendant claims that his sentence to life imprisonment without benefit of probation, suspension of sentence, or parole for a period of forty years is excessive under Article 1, § 20 of our state Constitution. His claim is without merit. The sentence meted out to the defendant was mandatory under the second degree murder statute under which he was convicted. Such a legislative determination of the appropriate punishment for the offense has not been shown to be excessive. This court has in the past rejected arguments that life imprisonment is an excessive penalty for the crime of second degree murder. State v. Brooks, 350 So.2d 1174 (La.1977).
This assignment of error lacks merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
DENNIS, J., concurs disagreeing with treatment of arguments 1 and 3.
NOTES
[1] At the time the crime was committed, that statute provided:

"Second degree murder is:
A. The killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simply robbery, even though he has no intent to kill; or
B. The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure."
[2] Only those remarks to which the defendant contemporaneously objected shall be considered, since only they can be availed of after verdict. C.Cr.P. 841.
[3] The record does not support the defendant's contention that his accomplices were unavailable to testify at his trial, a requisite for admission of hearsay statements as declarations against penal interest. State v. Gilmore, 332 So.2d 789 (La.1976).
[4] The same result is obtained under either the standard of review set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) or under this court's traditional "no evidence" standard. La.Const. 1974, art. 5, § 5(C).