395 So.2d 1337 (1981)
STATE of Louisiana
v.
Frank MOTTON.
No. 80-KA-2104.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
*1340 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Sheila Myers, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Michael Barry, New Orleans, for defendant-appellant.
COVINGTON, Justice Ad Hoc.[*]
Frank Motton was charged by indictment with first degree murder in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On appeal, defendant relies on fourteen assignments of error for reversal of his conviction and sentence.

FACTS
On the evening of June 23, 1979, William James Hardy a/k/a Jamie Hardy, visited the apartment where Motton was living with Hardy's sister, Gwen, and put a gun to his sister's head, threatening her. On the morning after the threat, June 24, 1979, Hardy returned to the apartment to apologize for his behavior, and became involved in an argument with his former girlfriend and other occupants of the apartment house. Hardy announced that he was going home to get a gun. Returning shortly afterwards, he shot through the front door of the apartment. Motton shot back at Hardy, according to some of the witnesses; however, Motton denied shooting at that time.
The defendant's version of the shooting incident was that after the disturbance, later in the afternoon of June 24, 1979, he armed himself and walked to the mailbox; on the way he encountered Hardy and Johnny Boy Wise, a friend of Hardy. Motton said that he could see a bulge under Hardy's shirt, which he thought was a gun. In light of Hardy's actions earlier in the day, the defendant said he wasn't going to take any chances, so he shot Hardy out of fear. Motton then turned himself in to the police. Wise gave a different version, which was apparently accepted by the jury; he stated that Motton approached Hardy with a gun in his hand, and after a brief greeting, shot Hardy.

ASSIGNMENT OF ERROR NO. 1
It is the appellant's contention that the record reflects patent error in that it does not show that the counsel appointed by the court at the arraignment had been admitted to the bar for at least five years previous to such assignment.
*1341 The record reveals that Frank Motton appeared before the lower court on July 16, 1979, for arraignment on a charge of first degree murder, a capital offense. The court appointed counsel for arraignment only. The indictment was read, and defendant, through the appointed counsel, entered the plea of not guilty. A minute entry of the arraignment was entered in the record as follows:
"Defendant appeared before the bar of the Court, and the Court appointed J. Pharr, Esq., for arraignment only. The Court read the Bill of Indictment, then defendant thru counsel entered a plea of Not Guilty, which the Court ordered recorded. The Court set this matter for Motion to Determine Counsel for Friday, 7/20/79."
Unattended by counsel, the defendant appeared at the July 20th hearing on the motion to determine counsel; the court reassigned the hearing for July 23, 1979. At the July 23rd hearing, Motton's attorney, William B. Morgan, II, enrolled as counsel of record. Fifteen days were allowed to file any pleadings.
The record does not show any objection to the arraignment, or the filing of any motions questioning whether the counsel appointed to represent the defendant at the arraignment had been a lawyer for at least five years; and does not show how long Mr. J. Pharr, Esq., had practiced law. After certain motions, which are not relevant to this assignment for error, and several continuances, the suit was set for trial on December 17, 1979.
The defense argues that patent error exists, because the record fails to affirmatively show that the court-appointed attorney who represented the defendant at the arraignment had been admitted to the bar for the requisite period of time.
La.C.Cr.P. art. 512 provides:
"When a defendant charged with a capital offense appears for arraignment without counsel, the court shall provide counsel for his defense in accordance with the provisions of R.S. 15:145. Such counsel must be assigned before the defendant pleads to the indictment, but may be assigned earlier. Counsel assigned in a capital case must have been admitted to the bar for at least five years. An attorney with less experience may be assigned as assistant counsel."
This Court had occasion to interpret article 512 in State v. George, 262 La. 409, 263 So.2d 339 (1972), vacated as to sentence, 411 U.S. 902, 93 S.Ct. 1532, 36 L.Ed.2d 192 (1973). When retained counsel was hospitalized at the time of the defendant's arraignment, the trial court appointed counsel for arraignment only. The facts showed that the appointed counsel had not been admitted to the bar for the requisite five years. The defendant assigned error that his arraignment was defective as violative of article 512. In finding no merit to the assignment of error, this Court said:
"Code of Criminal Procedure Article 512, upon which the defendant relies, provides for assignment of counsel in capital cases when the accused appears at arraignment without counsel. Under Article 515 assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of assigned counsel, and the court may appoint other counsel in substitution of or in addition to the lawyer previously assigned or specially assigned to assist the defendant at arraignment. The Comment under Article 515 states: `The last clause of this article, referring to counsel in substitution for counsel "specially assigned to assist the defendant at the arraignment," recognizes the frequent practice of appointing a presently available lawyer to assist a number of defendants in determining the proper plea at the arraignment. Then after the arraignment the court may appoint other counsel to represent the defendants in the trial of their respective cases.' Plainly the Code contemplates an assignment at arraignment that may be temporary, as in this case where the accused had his own retained attorney who was not present in court." (263 So.2d at 341)
*1342 This Court further observed in State v. George, supra, that there was no showing of prejudice since the defendant's retained counsel had ample time to change the plea.
The assignment of error in the instant case is not as strong as that in State v. George, supra, because there the counsel had been admitted less than five years, while here no evidence was offered that the appointed attorney had been admitted less than five years (the record does not reflect how long he had been practicing at the time of the appointment), or that the plea entered at the arraignment of Motton was not the proper plea, or that Motton attempted to change his plea, or was denied opportunity to file any motion or change of plea. He does not contend or show that any prejudice resulted from the entry of the plea of not guilty. Motton was in no way prejudiced by his arraignment with the court-appointed attorney representing him for that purpose.
Nevertheless, the defense argues that the minutes of record do not affirmatively show that the court-appointed counsel "had been admitted to the bar for at least five years," so that under State v. Youchunas, 187 La. 281, 174 So. 356 (1937), where the court minutes failed to show affirmatively that the accused was represented by counsel in a felony prosecution, Assignment of Error No. 1 shows reversible error. The defense also cites La.C.Cr.P. art. 514 as codifying the Youchunas rule. See Official Revision Comment under La.C.Cr.P. art. 514.
La.C.Cr.P. art. 514 reads:
"The minutes of the court must show either that the defendant was represented by counsel or that he was informed by the court of the defendant's right to court-appointed counsel."
We find that article 514 was complied with. The minutes herein show that the defendant was represented by counsel at all stages of these proceedings (by court-appointed counsel at the arraignment and by retained counsel at all other stages). There is no showing that the defendant was not represented throughout by qualified and skilled counsel.
For these reasons, Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in denying his motion to quash grounded on a claim that La.C.Cr.P. arts. 412, 413, and 414, and La.R.S. 15:114, governing the selection of grand jurors in Orleans Parish, are unconstitutional as violative of the Due Process and Equal Protection clauses of the constitutions of the United States and Louisiana. The basis for his contention is that the cited legislation denies him the right to an impartially selected grand jury because it vests in the respective Judge of an Orleans Parish Criminal District Court the power to select all twelve grand jurors from a list of not less than seventy-five names submitted by the jury commission to the judge; whereas in the other parishes, except for the foreman (who is selected by the Court), eleven members of the grand jury are determined by lot. The defense urged that the constitutionally defective selection process in Orleans Parish rendered the indictment and the subsequent proceedings, based on the indictment, null.
This Court has held that a defendant who claims that the method of selection of grand juries violates his constitutional rights must make an affirmative showing that the system of selection has fostered discrimination, either in his particular case or in a historical context. State v. Willie, 360 So.2d 813 (La. 1978). There has been no such showing by the defense in the case at bar. The assertion that the grand jury selection system used in Orleans Parish offers a potential for abuse "in that the Orleans Parish defendants are subjected to consideration of their cases by a Grand Jury selected by a process far more likely to be infected (perhaps unconsciously, subtly, and even unprovably) by the prejudices (be they racial, ethnic, economic, sexist, occupational, etc.) of the single selecting judge than are the country parish defendants whose Grand Juries are, with the lone exception of the foreman, drawn by lot, i. e., random selection", without any proof of abuse, does not constitute an affirmative showing of discrimination.
*1343 Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
The defense protests that "the court overruled defendant's objection to hearsay during the testimony of State witness Pearl Bradley at the trial on the merits." Pearl Bradley, who was the aunt of the victim, lived in the vicinity of the shooting. In the course of the State's direct examination, the following occurred:
"Q. Did you of your own knowledge, you didn't see the actual shooting going on that morning, did you, Ms. Bradley?
A. No, I didn't.
Q. Sometime during the day, did you learn from people that [was] what had happened? Somebody told you what had happened?
MR. MORGAN (the defense attorney):
I'm going to object to that.
MS. MYERS (the prosecuting attorney):
I'm not asking for the details of it, only to establish a state of mind of this witness, Your Honor.
THE COURT:
I will let her answer yes or no, then I want to hear your next question. Just answer yes or no.
THE WITNESS:
What was the question?
MS. MYERS RESUMES DIRECT EXAMINATION:
Q. Did you learn what had happened from somebody that morning, Ms. Bradley, without seeing, it, somebody told you what had happened?
A. Yes."
The state continued this line of questioning without further objection by defense counsel. Ms. Bradley then was asked if she had spoken to Hardy on the day of the shooting. The following colloquy took place:
"A. That's right, uh-huh.
Q. Could you tell the jury, Ms. Bradley, not what he said, as you recall it, but what you told him? What kind of things were you telling him?
A. I just asked him what happened. And he said, `What you mean what happened?' I said, `What you did this morning?' And he said that he shot back. I said, `Were you the one doing the shooting first?' He said, `First, no.' I said, `Oh, yes, I did, I heard two shots.' He said, `Yes, I shot.' Then he told me that Frank shot back at him. I said, `Yeah, I heard you all back there shooting like you'all were crazy.' I said, `Where that gun at?' He said, `I don't have it.' Then I searched him. I said, `Let me see?' Then I patted him down. He didn't have it on him then.
Q. When you tell the jury that you patted him down, Ms. Bradly, could you actually tell us what you did with your hands?
A. Yes, he had on a t-shirt. I put my hands on his behind and patted him on down. And he had his hand up like this, and said, `I told you I ain't got no gun.' I said, `What you do with it?' But he wouldn't tell me what he do with it. He just didn't answer.
Q. Were you satisfied after patting him down, Ms. Bradley, that he didn't have a gun on him?
A. Yes, I was satisfied."
The defense now objects to the witness' narrative of the conversation between her and the victim as inadmissible hearsay evidence.
As reflected from the quoted testimony, the only objection made by defense counsel was to the inquiry concerning whether or not somebody told the witness what had happened on that occasion. The court immediately intervened to assure that only a "yes" or "no" answer would be given. When an affirmative response was given by the witness, the State pursued this line of questioning without further objection, and elicited the testimony which the defense now considers hearsay. We agree the testimony is hearsay. See State v. Martin, 356 So.2d 1370 (La.1978).
*1344 However, it is not all hearsay which is erroneously admitted that presents a ground for reversal. The record reveals that defense counsel objected at the beginning of this series of questions, but no ground therefor was stated. Despite the trial court's indicating that counsel should be alert to the up-coming questions, no objection was made to the question which elicited the narrative from the witness Bradley, and no motion to strike or admonitory rulings were requested. At no time did defense counsel suggest a ground for his objection. An objection stating no basis or ground presents nothing for this Court to review; consequently, there is no merit to the appellant's argument. State v. Lewis, 353 So.2d 703 (La.1977).
Moreover, since no objection or ground therefor was made by defense counsel to the testimony of Ms. Bradley regarding her conversation with the victim, this issue has been waived under La.C.Cr.P. art. 841.
It is well established, under the contemporaneous objection rule that an irregularity or error at the trial can not be availed of after verdict unless the defendant timely made known his objection and the grounds therefor. State v. Boutte, 384 So.2d 773 (La.1980); State v. Arnold, 367 So.2d 324 (La.1979).
We find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 4
By this assignment the defense contends that the trial judge erred in sustaining the prosecution's objection to a question asked on cross examination of State's witness, Johnny Boy Wise, by defense counsel. The objection was made during the following testimony of Wise:
"Q. So you were with James the night before he was killed?
A. Yes, I was.
Q. Were you with him when you were with his sister?
A. (NO RESPONSE)
Q. Were you with him when he put the gun to his sister's head?
A. Yes, I was.
Q. He cursed her out, and said that he was going to blow her brains out, didn't he?
A. No, he didn't.
Q. What did he say?
A. He was just clowning around and stuff with her. You know, he didn't say nothing about blowing her brains out or nothing.
Q. With that pistol?
A. With that pistol.
Q. He didn't tell her that. If she said he was cursing and said that he was going to blow her brains out, she would be lying? Is that right?
MS. MYERS:
Your Honor, Counsel can't ask a witness to comment on testimony of another witness.
THE COURT:
I agree, sustained.
MR. MORGAN RESUMES CROSS EXAMINATION:
Q. All right, don't answer that. Where did that incident take place that he put the gun on her head?
A. What?
Q. Where ... when did that happen that he put the gun at his sister's head?
A. It happened at night time.
Q. Where?
A. In front of the house.
Q. Whose house?
A. Frank and Gwen's house.
Q. In front of Frank and Gwen's house on the sidewalk?
A. Yep.
MR. MORGAN:
I have no more questions."
We find that counsel for the defense acquiesced in the ruling of the court below; consequently, this objection has been waived under La.C.Cr.P. art. 841. State v. Benitez, 381 So.2d 815 (La.1980); State v. Webb, 364 So.2d 984 (La.1978).

*1345 ASSIGNMENT OF ERROR NO. 5

On appeal, the defendant argues for the first time that a photograph of the deceased (Exhibit S-9) was inadmissible, because its gruesomeness made its probable inflammatory or prejudicial effect outweigh its probative value. Defendant's only objection at the trial to the photograph, however, was on the ground that it was irrelevant or a proper foundation had not been laid for its introduction into evidence.
The record in the instant case shows that defense counsel at the trial stated when S-9 was offered into evidence:
"BY MR. MORGAN:
I'm going to object in the line of evidence. There has been no evidence introduced."
The test of admissibility for allegedly gruesome pictures is whether their probative value outweighs the possible prejudice that may result from their display to the jury State v. Lewis, 353 So.2d 703 (La. 1977); State v. Williams, 343 So.2d 1026 (La.1977). Photographs of the body of a deceased victim have generally been held relevant to prove the corpus delicti, to corroborate other evidence of the manner in which death occurred, to establish location, number and severity of the wounds, and to establish the identity of the victim. State v. Landry, 388 So.2d 699 (La.1980); State v. Cooper, 334 So.2d 211 (La.1976).
This Court in State v. Landry, supra at 704, stated:
"Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Valentine, 364 So.2d 595 (La.1978).
"In the instant case, two photographs were admitted, one depicting a gash on the victim's face, and the other showing the location of wounds on the victim's torso. The defendant argues that they were not relevant because he stipulated as to the identity of the victim, and the cause of his death, two facts which are often shown by the use of photographs. The existence of such a stipulation necessarily bears upon a balancing of the probative value of the photographs against their prejudicial effect; nevertheless, the decision remains one for the trial court. State v. Sterling, 377 So.2d 58 (La.1979).
"The photographs of the victim clearly show the location and severity of the wounds he sustained. That evidence is relevant to show intent to kill or inflict great bodily harm. The photographs were thus relevant to an issue not stipulated to by the defendant, and had a probative value that overcame any possible prejudicial effect on the jury. The trial court did not err in admitting the photographs."
Moreover, defense counsel did not object to the photograph's use at the trial on the ground he now maintains is the basis for its inadmissibility, i. e., its inflammatory effect outweighs its probative value. This is a new basis for objection. It is the settled law of this state that a new basis for objection is not permitted for the first time on appeal. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Quincy, 363 So.2d 647 (La.1978).
As set forth in the preceding reasons, an irregularity or error to which an objection was not contemporaneously made can not be raised by the defendant for the first time after verdict. The defendant must have timely made known his objection and the grounds therefor. La.C.Cr.P. art. 841.
Assignment of Error No. 5 is without merit.

ASSIGNMENTS OF ERROR NOS. 6 AND 7
By these assignments the defendant urges that the trial court erred in allowing "prosecutorial misconduct" during the trial. More specifically, the defense asserts that the prosecuting attorney in effect "testified" during an attempt to impeach the defendant, who testified in his own defense; and, further that the prosecutor expressed his personal opinion concerning the facts of the case and the veracity of the defendant.
*1346 During cross examination of Motton by the State, he disagreed with certain state witnesses who testified that, from a location nearby, they had seen the encounter between the defendant and the deceased. The instant assignments of error stem from the following colloquy:
"Q. My question is, then all those people are incorrect, is that correct, Mr. Motton, Mr. Dupre is incorrect ...
A. Yes.
Q. Ms. Foster's incorrect ...
A. Yes, they are incorrect.
Q. Ms. Robinson is incorrect ...
A. Yes, yes.
Q. Plus all the Hardys and all the Bradleys are all incorrect?
A. They're incorrect.
THE WITNESS:
Um, excuse me, Your Honor, but from the pictures that the D.A. have, that corner can only be seen from two or three angles. Anybody on Terpsichore Street where ... from the side where we was at, anybody on Terpsichore off of any angle, if they wasn't on the exact opposite corner, you cannot see around that corner.
MS. MYERS RESUMES CROSS EXAMINATION:
Q. Mr. Motton, would it surprise you to know that I was out there when ...
THE COURT:
No, Ms. Myers. You are testifying.
MS. MYERS:
Well, Your Honor, I believe the witness's comment is without any substantiation. He's just ...
THE COURT:
Well, Ms. Myers, just a minute. Just disregard that.
MS. MYERS:
I'm sorry, Your Honor, I apologize to the Court.
THE COURT:
And you should that is testimony unsworn, disregard it, Ladies and Gentlemen."
The defense asserts that these objectionable statements by the prosecutor destroyed the defendant's credibility as a witness and suggested to the jury that the prosecutor was "privy to facts/information which were not introduced into evidence and which confirmed the prosecutor's personal belief in the merits of the state's case."
While it is generally considered error for a prosecutor to state an individual belief concerning the accused's guilt when that remark is made in such a way that the jury may conclude that the prosecutor's belief is based on evidence outside the record, the expressing of an opinion based on evidence within the record is permissible. State v. Procell, 365 So.2d 484 (La.1978); State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964). In this case the prosecutor's belief and opinion were based on the combined testimony of several state witnesses as well as her own observations, and did not directly urge a guilty verdict on the basis of evidence outside the record. Her remarks were merely argumentative and were, thus, objectionable; however, defense counsel made no objection to these remarks at trial, and did not move for a mistrial, thereby failing to properly preserve the issue for this Court to review on appeal. La.C.Cr.P. art. 841. Nothing is presented for appellate review. State v. Benitez, supra.
In addition, the trial judge immediately stopped the prosecutor, exacted an apology, and admonished the jury to disregard the remarks. In State v. Procell, supra, the Court said:
"Although it is generally considered erroneous for the prosecuting attorney to declare his individual opinion or belief that the accused is guilty when the accusation is made in such a manner that the jury may understand that the prosecutor's belief is based on evidence dehors the record, such an opinion is permissible if the prosecutor refers to, or it is apparent that his opinion is based on, the evidence of record. State v. Sercovich, 246 La. 503, 165 So.2d 301 (1964). In this case the beliefs and opinions expressed were based upon the evidence produced at the trial. There was no attempt on the part of the prosecutors to express beliefs or opinions *1347 based upon facts or circumstances dehors the record. None of the remarks directly urged a guilty verdict on the basis of evidence outside the record or solely on the beliefs of the prosecutors. Most of the remarks expressed the prosecutor's opinion of a witness' testimony; an argument on the credibility of a witness being proper. La.Code Crim.Pro. art. 774; State v. May, 339 So.2d 764 (La.1976).
"If it can be considered that the remarks of the prosecutors were impermissible under the rule expressed in Sercovich, the law nevertheless provides a remedy for the defendant. Article 771 of the Code of Criminal Procedure mandates that the judge `shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the State, in the mind of the jury.' The judge did admonish the jury in the instant case, and properly ruled that a mistrial should not be granted. La.Code Crim.Pro. art. 775; State v. Duke, 358 So.2d 293 (La.1978); State v. Rittiner, 341 So.2d 307 (La.1977); State v. Landry, 262 La. 32, 262 So.2d 360 (1972)."
For these reasons, these assigned errors, numbers 6 and 7, are without merit.

ASSIGNMENTS OF ERROR NOS. 8 AND 9
Defendant contends that the trial judge commented on the evidence in contravention of the no-judge-comment rule of La.C.Cr.P. art. 772, which reads:
"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
The assignment arose in the following context:
"MR. MORGAN DURING HIS CLOSING ARGUMENT:
... Ms. Myers leads you to believe that he (defendant) went on [to] the corner, and while he was waiting there, walked up [up walked] the Defendant [victim]. How was he to know that the Defendant [victim] was even coming on that corner? How was he to know that the Defendant [victim] was not even picked up by the police, cause the police were looking for him. A man that was not unfamiliar with jail. He had already been convicted and went to prison with Johnny Wise.
MS. MYERS:
Your Honor, there has been no testimony that the victim was ever convicted of a crime.
THE COURT:
That is correct. Disregard that. You are going to be, Ladies and Gentlemen, the judges of the testimony in the case. I hesitate to comment on it, but the testimony I will in this case, the testimony does not indicate that the Defendant was ... rather the victim was convicted of a crime. My recollection of testimony indicated that an association was made in jail or prison, but without regard to a conviction.
MR. MORGAN:
Well, then I will rephrase it. The victim was not unfamiliar with jail. He had been jail, as testified with Johnny Wise, who had been convicted and gone out and purchased a gun with the victim..."
In the case at bar the remarks to which the defense objects were not a comment on the facts; the judge simply pointed out that the defense counsel had in error referred to the victim as having been convicted of a crime when there was no evidence of a conviction, rather the testimony indicated a prison or jail association with Wise. The judge's comment in no way permits a reasonable inference that it expresses or implies the judge's opinion as to a material issue or the defendant's innocence or guilt.
Moreover, we believe that his remarks were proper because they are within an exception to article 772. A trial judge's *1348 remarks made while giving reasons for a ruling are not objectionable as comments on the case unless they are unfair or prejudicial to the accused. State v. Williams, 375 So.2d 1379 (La.1979); State v. Hodgeson, 305 So.2d 421 (La.1974). As these remarks of the trial judge while ruling on an objection were not unfair or prejudicial to the defendant, these assignments of error have no merit.

ASSIGNMENT OF ERROR NO. 10
By this assignment the defendant claims that reversible error was committed by the trial judge in his charging of the jury on the weight and effect of "character evidence."
The trial judge gave the following instructions on character evidence:
"Now the general reputation of an accused for honesty, peace and quiet, is competent evidence. It is to be considered by you the jury together with all the other testimony and the physical evidence which I permitted you to view. Now general reputation of a man is an opinion held of him by persons in the community, and who live in his neighborhood, or vicinity. It is not the personal opinion of the witness as to the Defendant's character that is to be considered by you. Reputation means what others in the community known to the witness think of the Defendant. So when the Defendant's good reputation for honesty, peace and quiet has been established, then the presumption of law is that the crime charged is inconsistent with his former life and character, and the jury should give him the benefit of the presumption to him. Now a man's good character may sometimes create a reasonable doubt of the Defendant's guilt when no such doubt would have existed but for such good character. But when a man's guilt has been established beyond a reasonable doubt, then the question of good character could not avail the accused. In other words, evidence of good character cannot destroy conclusive evidence of guilt beyond a reasonable doubt."
Upon his completion of the charges to the jury, Judge Ward requested suggested charges and objections from the State and the defense. Both counsel responded that they had neither suggestions nor objections. The record, thus clearly reflects that the defense raised no objection to the charges. Since in the case at bar no objection was made at the time of the charges, the defendant can not complain of the charges on appeal. State v. Simms, 381 So.2d 472 (La. 1980); State v. Mitchell, 319 So.2d 357 (La. 1975).
Nevertheless, the appellant argues that "Inasmuch as the trial court's charge to the jury does not constitute `evidence' in the case, and is included in the record of this cause on appeal, inspection thereof for error is permissible under Art. 920, C.Cr.P." There is no merit in this contention. Under Article 920, La.C.Cr.P., a defect in the general charge is not an error "discoverable by a mere inspection of the pleadings and proceedings." See State v. Craddock, 307 So.2d 342 (La.1975), and the cases therein cited. An objection to a jury charge must be made before the jury retires for deliberation or the objection is untimely. State v. Jefferson, 379 So.2d 1389 (La.1980).
This Court has consistently held that a jury charge must be considered as a whole, and particular expressions in a charge must be construed in context of the entire charge and it has declined to reverse a conviction on the ground of an erroneous charge unless the disputed portion, when considered in connection with the remainder of the charge, is erroneous and prejudicial. State v. Dardar, 353 So.2d 713 (La.1977); State v. George, 346 So.2d 694 (La.1977).
In State v. Dardar, supra at 715:
"In reviewing an objection made to a jury charge, we must consider the charge as a whole and construe particular expressions in context. This Court will not disturb a trial judge's ruling unless the disputed portion, when viewed in light of the entire instruction, is erroneous and prejudicial. State v. George, La., 346 So.2d 694 (1977); State v. Walker, 204 La.

*1349 523, 15 So.2d 874 (1943); State v. Davis, 154 La. 295, 97 So. 449 (1923)."
We conclude that the defendant was not prejudiced by the instructions given by Judge Ward in the instant case. There is no merit in this assignment.

ASSIGNMENT OF ERROR NO. 11
By this assignment the defendant urges that the trial court, at the hearing on the motion for new trial erred in overruling a defense objection to the State's asking Catherine Eubanks, the first witness called by defense on the hearing, her opinion about "who was right or wrong in the shooting that killed Jamie?"
The testimony giving rise to this objection follows:
"Q. Okay, but did you reach any conclusion as to who was right and who was wrong in the shooting that killed Jamie?
BY MR. MORGAN:
I'm going to object to that
BY THE WITNESS:
Well, frankly, I couldn't say because I don't
BY MR. MORGAN:
Wait, wait.
That's for the court, the judge and the jury in deciding wrong.
BY MS. MYERS:
Your Honor, I think the witness can give her conclusion because of the nature of this proceeding. I have questions to ask her relative todepending on what her conclusion is, the nonappearance of this witness, Your Honor.
BY THE COURT:
Yes, overruled. Answer the question.
BY THE WITNESS:
Who was right or wrong?
EXAMINATION BY MS. MYERS:
Q. Right, who did you think was right or wrong?
A. Well, Mam, I don't like to see nobody get hurt and Ilike I said, I was a friend of both of the men. From what I know, I know Jamie supposedly had shot in Frank's house and, well, like I say, Mam, I don't think none of them was right, you know, even if Jamie would have shot Frank.
Q. I take it then, it is safe to say you didn't think that Frank was totally at fault?
A. I'm not saying it was Frank's fault and I'm not saying, you know, it was Jamie's fault or whoI'm not saying both of themI'm not saying one was right and the other one was wrong.
Q. Okay. Am I correct in saying, Ms. Eubanks, after witnessing the incident, you had no opinion?
A. Well, like I said, I didn't want to get involved because I was a friend of both of them and I just kept it all, you know, to myself cause they had other people that saw what happend besides me.
Q. Can you tell us why you're involved now, Ms. Eubanks?
A. Because lastlet me see, I believe this was last month, they told me that Frank was found guilty and a whole lot of old stuff and they told me that a whole lot of people had some things to say that wasn't really true and they said thatthey said that Frank shot Jamie down and just drove off. They said all kinds of things. And, mostly what made me came down was because from what I can see for myself from across the street, it was self defense."
The defense now asserts that the question was improper as the witness was not qualified to give an opinion on the matter in question. The question was not calculated to have this witness for the defense determine the accused's guilt or innocence of the crime charged, as the defendant now argues; guilt had already been fixed by the jury at the trial. The question was admissible for the purpose of ascertaining the state of mind of the witness, or proving her credibility, or leading up to why she had not testified at the trial.
In any event, the question and answer were not prejudicial to the defendant, for the witness indicated she did not know who was right or wrong, and finally said the shooting was done in self defense.
This assignment of error lacks merit.

*1350 ASSIGNMENT OF ERROR NO. 12

The defendant contends the trial judge erred in denying his motion for a new trial.
Following his conviction, a motion for new trial was filed on the grounds of a verdict contrary to law and evidence, and newly discovered evidence. La.C.Cr.P. art. 851(1) and (3).
In considering a motion for new trial based on newly discovered evidence, the test to be used is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Huckaby, 368 So.2d 1059 (La.1979); State v. Williams, supra. The newly discovered evidence presented at the hearing on the defendant's motion does not meet that test.
In reviewing the denial of such motions, this Court has held that the trial judge has considerable discretion in evaluating the impact of newly discovered evidence on the verdict and his ruling will be disturbed only when there is a clear showing of abuse of this discretion. State v. Manning, 380 So.2d 54 (La.1980); State v. Provost, 352 So.2d 661 (La.1977); State v. Robinson, 337 So.2d 1168 (La.1976).
In the instant case, the testimony of Ms. Eubanks, who was a close friend of defendant's father, was contrary to that of all the State witnesses and even to that of the defendant. She is the only one to say that the victim actually had a gun in his hand at the time of the shooting and to indicate that Wise, the friend of Hardy, may have removed the weapon from the scene. The testimony of Ms. Robinson, who was a visitor at the Motton apartment, was concerned with the time interval between Motton's leaving his apartment and the sound of gunfire, was in contradiction of that of State witnesses that Motton loitered on the corner, apparently lying in wait for Hardy. She heard the shots "a couple of seconds" (maybe three seconds) after Motton left the apartment. By his denial of a new trial, it is obvious Judge Ward found this testimony incredible. Moreover, other evidentiary facts amply support the State's version of the crime.
Review of the "newly discovered evidence" relied upon by the defense, particularly that of Ms. Eubanks, convinces us that this issue was purely one of credibility. Where credibility is involved, the trier of fact is undoubtedly better situated to make the determination, and the principles announced above do not permit a finding that the trial judge abused his discretion.
Further, the defendant's contention that this "new evidence" was not discovered and available to him at the date of the trial is not substantiated by the record. These witnesses could have been procured with the exercise of the slightest diligence. The proposed evidence must not only be newly discovered, but also not discoverable by reasonable diligence before the verdict for it to justify the granting of a new trial. State v. Bell, 377 So.2d 275 (La.1979); State v. Lee, 343 So.2d 1060 (La.1977); State v. Drake, 319 So.2d 427 (La.1975).
Defendant finally argues in this part of his assignment of error that the evidence was insufficient to convict Motton of first degree murder. The basis of this argument is that Judge Ward, in denying the motion for new trial, expressed the opinion that "I did feel a more appropriate verdict was Manslaughter." This was his personal opinion, not his judicial opinion. His judicial opinion was that the evidence was sufficient to convict the defendant for first degree murder, as shown by his denial of the motion for new trial.
In view of the foregoing, we are unable to say the trial judge erred in denying the defendant's motion for a new trial. Assignment of Error No. 12 is without merit.

ASSIGNMENTS OF ERROR NOS. 13 AND 14
In these assignments the appellant makes a two-pronged attack on the sufficiency of the evidence to convict on a charge of first degree murder.
Defendant's Assignment of Error No. 13 is addressed to the question of the sufficiency of the evidence to convince a rational *1351 trier of fact of the existence of every essential element of the crime of first degree murder beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
The defendant urges that the evidence in the instant case was totally lacking as to any of the "aggravating circumstances" set forth in La.C.Cr.P. art. 905.4; and, that the indictment and trial of defendant for first degree murder constituted such an "over-charge" as to render the proceedings, including the verdict, violative of defendant's due process rights, since the prosecuting attorney conceded that no statutory aggravating circumstances existed in the instant case. (Assignment No. 14)
The "no evidence" standard[1] was first questioned by this Court in State v. Poree, 386 So.2d 1331 (La.1980), fn. 6, p. 1333; and, it has now been disavowed by this Court in State v. Roy, 395 So.2d 664 (La.1981). We hold that in light of Jackson v. Virginia, supra, as construed by State v. Roy, supra, the "no evidence" standard is no longer viable. We believe that henceforth the rule to follow is that in order to find sufficient evidence to support a verdict of conviction, it must be concluded that after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the defendant was guilty beyond a reasonable doubt. See Jackson v. Virginia, supra. The due process clause of the Fourteenth Amendment of the United States Constitution demands that the State must prove beyond a reasonable doubt every essential element necessary to constitute the crime charged. In re Winship, supra.
First, the appellant argues that the evidence in the case at bar was totally lacking as to any of the "aggravating circumstances" set forth in La.C.Cr.P. art. 905.4, which constituted an essential element of the crime of first degree murder under La.R.S. 14:30 (as it read prior to the June 29, 1979 amendment).
The thrust of these assignments is that because the prosecutor informed the trial court that there were "no aggravating circumstances" in this case, an essential element of the crime of first degree murder was not proven. There is no merit to this argument. At the time of the perpetration of this crime, first degree murder was not defined in such a way that "aggravating circumstances" was an essential element; it was defined so that specific intent to kill or to inflict great bodily harm was the essential element. It was at the sentencing stage of the proceedings that "aggravating circumstances" had to be taken into consideration. La.C.Cr.P. arts. 905.3, 905.4.[2] In *1352 order to fix the death penalty for this crime, the jury, at the sentencing stage of the trial, was required to find the existence of a statutory aggravating circumstance.
La.R.S. 14:10(1) defines specific intent as follows:
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
La.R.S. 15:445 reads in part as follows:
"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
In State v. Williams, 383 So.2d 369, 373 (La.1980), this Court said:
"Specific intent is a state of mind and as such, it need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. Thus, charging the victim in a threatening manner and trying to get at him with a knife over a bar as [has] been found to be evidence of specific intent to kill. State v. Garner, 241 La. 275, 128 So.2d 655 (1961). Likewise, the pointing of a gun at the victim as it was fired has been ruled evidence of a specific intent to kill. State v. Procell, 365 So.2d 484 (La.1978)."
There is ample evidence in the record viewed in the light most favorable to the prosecution to establish that the defendant here armed himself with a pistol, lay in wait for Hardy and shot the victim on sight without warning, with specific intent, all because of an earlier altercation. There was sufficient evidence to convince a rational jury of the existence of every essential element of the crime of first degree murder beyond a reasonable doubt. We find that the State has proved beyond a reasonable doubt every fact necessary to constitute the crime of first degree murder.
These assignments do not show reversible error.

DECREE
For the reasons assigned, the conviction and sentence of Frank Motton are affirmed.
AFFIRMED.
MARCUS, J., concurs.
NOTES
[*] Judges Covington, Chiasson and Lear of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Dennis and Blanche.
[1] See e. g. State v. Huckaby, 368 So.2d 1059, 1065 (La.1979); State v. Williams, 354 So.2d 152 (La.1977). Based on the theory that this Court's appellate jurisdiction in criminal matters extends only to questions of law, LSA-Const. Art. 5, § 5(C), and it is only where a defendant has moved for a new trial based upon the contention that there is no evidence at all of the crime charged or an essential element thereof, is a question of law presented which this Court can review.
[2] The crime in question occurred on June 24, 1979. The present statute defining "first degree murder" requires the existence of one of the enumerated aggravated circumstances. This statute (La.R.S. 14:30) became effective June 29, 1979, some four days after the offense in question. The statute in effect at the time the crime was committed defined "first degree murder" as "... the killing of a human being when the offender has a specific intent to kill, or to inflict great bodily harm." Hence, an "aggravating circumstance" was not an essential element of the crime. The legislature amended 14:30.1 to define second degree murder as an unaggravated specific intent homicide and then this Court in State v. Payton, 361 So.2d 866 (La.1978), stated that by this amendment, "... the legislature clearly intended by implication to remove this type of conduct from the definition of first degree murder and to redefine the capital offense as a specific intent homicide accomplished with a statutory prescribed aggravating circumstance." However, by Act No. 796 of 1978 the legislature again amended La.R.S. 14:30.1 by repealing the provision which was the source of the "implied amendment" theory of Payton, supra. At the time of the offense in question, "second degree murder" was defined as:

"Section 1. Section 30.1 of Title 14 of the Louisiana Revised Statutes of 1950 is hereby amended and reenacted to read as follows: "§ 30.1. Second Degree Murder
"Second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm."
See also State v. Perkins, 375 So.2d 1179 (La.1979).