672 So.2d 158 (1996)
STATE of Louisiana
v.
Christopher SEPULVADO.
No. 93-KA-2692.
Supreme Court of Louisiana.
April 8, 1996.
Rehearing Denied May 10, 1996.
*161 Joseph William Bailey, Logansport, R. Neal Walker, Clive Adrian Stafford Smith, Elizabeth B. Daniel, New Orleans, for Applicant.
Richard P. Ieyoub, Attorney General, Don M. Burkett, District Court, Richard Z. Johnson, Jr., Charles B. Adams, Mansfield, for Respondent.
MARCUS, Justice.
Christopher Sepulvado was indicted for the first degree murder of his six year old stepson, Wesley Allen Mercer, in violation of La. R.S. 14:30.[1] After trial by jury, defendant was found guilty as charged. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant. The trial judge sentenced defendant to death in accordance with the recommendations of the jury.
On appeal, defendant relies on eighteen assignments of error[2] for reversal of his conviction and sentence.[3]

*162 FACTS
On Thursday, March 5, 1992, defendant married the victim's mother, Yvonne. The next day, Friday, the victim came home from school, having defecated in his pants. Yvonne spanked him and refused to give him supper. Defendant returned home from work at approximately 9:00 p.m. That night, the victim was not allowed to change his clothes and was made to sleep on a trunk at the foot of his bed. On Saturday, the victim was not allowed to eat and was again made to sleep on the trunk in his soiled clothes. At around 10:00 a.m. on Sunday, defendant and the victim were in the bathroom, preparing to attend church services. Defendant instructed the victim to wash out his soiled underwear in the toilet and then take a bath. When the victim hesitated to do so, defendant hit him over the head with the handle of a screwdriver several times with enough force to render him unconscious. Thereafter, the victim was immersed in the bathtub which was filled with scalding hot water.
Approximately three hours later, at around 1:50 p.m., defendant and his wife brought the victim to the emergency room at the hospital. At that time the victim was not breathing, had no pulse, and probably had been dead for approximately thirty to sixty minutes. All attempts to revive the victim were futile. The cause of death was attributed to the scald burns covering 60% of the victim's body, primarily on his backside. There were third degree burns over 58% of the body and second degree burns on the remaining 2%. The scalding was so severe that the victim's skin had been burned away. In addition to the burns, medical examination revealed that the victim had been severely beaten. The victim's scalp had separated from his skull due to hemorrhaging and bruising. Also, there were deep bruises on the victim's buttocks and groin which were not consistent with accidental injury.
At trial, defendant admitted that he hit the victim with a screwdriver, but contended that the victim fell into the tub accidentally. However, the state presented expert testimony that the burn marks on the victim's body did not indicate he accidentally fell into the tub, since there were no signs of splash marks that would result from a struggle. The experts testified that the marks were consistent with the victim being dipped or immersed into the scalding water.

DISCUSSION

Scope of Review
In State v. Taylor, 93-2201 (La. 2/28/96), 669 So.2d 364, we overruled our decision in State v. Smith, 554 So.2d 676 (La.1989), and returned to the previous standard of review in which errors not contemporaneously objected to during the guilt phase of a capital case were not reviewable on appeal, although unobjected to errors during the sentencing phase were reviewable, as mandated by La.Code Crim.P. art. 905.9 and Supreme Court Rule 28, § 1. See State v. Lindsey, 404 So.2d 466 (La.1981). In argument before this court, defendant concedes that we can adopt such a rule, but contends it should be applied prospectively only and not be applied to his case. We disagree, finding there is nothing retroactive in applying this standard of review to the present case.
La.Code Crim.P. art. 841(A) provides that an "error cannot be availed of after verdict unless it was objected to at the time of the occurrence." Although Smith indicated that as a policy decision, this court would review unobjected to errors in the guilt phase of capital cases, the law embodied in art. 841(A) remained the same. Moreover, defendant cannot claim his attorney acted in reliance on Smith, since during the guilt phase, his attorney had no way of knowing if defendant would ultimately receive the death penalty.
Accordingly, we adhere to our decision in Taylor and will not review any errors in the guilt phase in which no contemporaneous objection was lodged.[4]

PRETRIAL ISSUES

Assignment of Error No. XII
Defendant contends that the trial judge erred in failing to suppress a videotaped *163 statement taken subsequent to his arrest. He argues he was tricked into giving the statement because police led him to believe that giving the statement would be to his advantage.
Before the state may introduce a confession into evidence, it must affirmatively show that the statement was voluntary and not induced by fear, duress, intimidation, menaces, inducements, or promises. La. Code Crim.P. art. 703(D); La.R.S. 15:451; State v. Bourque, 622 So.2d 198 (La.1993). The test for voluntariness requires a review of the totality of the circumstances under which the statement was given; any inducement offered is but one factor in that analysis. State v. Lewis, 539 So.2d 1199 (La.1989). A statement by police to a defendant that he would be better off if he cooperated are not "promises or inducements designed to extract a confession." State v. Petterway, 403 So.2d 1157, 1160 (La.1981); State v. Dison, 396 So.2d 1254 (La.1981).
In the instant case, the testimony by the police officer demonstrates that any inducements or promises made to defendant were not of such a nature to render the statement involuntary. He was merely told that making a statement might be to his or his wife's advantage. This vague, noncommittal remark hardly rises to the level of a promise which would cause defendant to make a statement that he otherwise would not. The trial judge did not err in refusing to suppress this statement.
Assignment of Error No. XII is without merit.

Assignment of Error No. XIII
Defendant contends that the trial judge erred in failing to appoint a sanity commission. He argues that he presented "clear evidence" that he was having hallucinations and delusions while in his jail cell and his testimony was corroborated by the jailer.
The appointment of a sanity commission is not a perfunctory matter or a ministerial duty of the trial court and is not guaranteed to every accused in every case. State v. Nix, 327 So.2d 301, 323 (La.1975). The defendant must establish reasonable grounds for the trial judge to believe that he is mentally defective or lacks the capacity to understand the proceedings against him or to assist in his defense before the court is required to appoint a sanity commission. La.Code Crim.P. art. 643; State v. Rogers, 419 So.2d 840, 843 (La.1982).
In the instant case, it is clear from the testimony at the hearing that defendant did not establish reasonable grounds requiring the trial judge to appoint a sanity commission. Defendant has no history of mental illness, except for the hallucinations which began to occur only after his arrest. Furthermore, the trial judge found that he was oriented as to time and place, he knew who he was, and could accurately relate his personal and family history. He understood what the charges were against him, and the consequences of these charges. Defendant's testimony at trial demonstrated that he was able to assist his counsel in his defense. Accordingly, the trial judge did not abuse his discretion when he denied the motion to appoint a sanity commission.
Assignment of Error No. XIII is without merit.

VOIR DIRE ISSUES

Assignment of Error Nos. V(B) & (C)
Defendant contends that the trial judge erred in denying his challenges for cause of four prospective jurors who were predisposed toward the death penalty. He argues the trial judge used an incorrect standard in determining whether the prospective jurors were predisposed toward the death penalty.
The proper standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985).
In the instant case, some of the trial judge's remarks suggested he applied the standard of whether the juror would "automatically *164 vote for the death penalty," as opposed to the correct "substantial impairment" standard. However, after reviewing the record, we conclude that all the challenges for cause were properly denied under the "substantial impairment" standard.
Billie Simmons testified that she saw "nothing wrong with the death penalty" and felt there were "a lot of cases now that deserve it." However, Ms. Simmons also testified that she would seriously consider mitigating circumstances. Clearly, her responses do not indicate a predisposition toward the death penalty, and her views on the death penalty do not appear to be such that they would substantially impair her from performing her duties as a juror. Therefore, the challenge for cause was properly denied.
Royal Youngblood initially stated that if defendant was found guilty, he would "kind of lean" toward the death penalty. However, he also stated in response to defense questioning that if the trial judge instructed him to entertain a life sentence, he would do so and that his mind was not made up toward the death penalty. Based on these answers, it is clear that Mr. Youngblood's views on the death penalty would not substantially impair him from performing his duties as a juror, and the trial judge properly denied the challenge for cause.
Doris Parrott indicated that she felt the death penalty was appropriate for "such things as murdering a child." However, she stated she would not automatically vote for the death penalty, nor would she be inclined to vote for the death penalty simply because the defendant was guilty of murdering a child. These responses indicate Ms. Parrott's views on the death penalty did not substantially impair her from performing her duties as a juror, and the challenge for cause was properly denied.
Jason Goff also stated that he felt the death penalty was appropriate where a person was convicted of the murder of a child, but stated he would be open-minded as to either penalty and would consider all mitigating circumstances. It is apparent that his views on the death penalty would not have substantially impaired him from performing his duties as a juror, and the challenge for cause was properly denied.
Assignment of Error Nos. V(B) & (C) are without merit.

GUILT PHASE ISSUES

Assignment of Error No. XI
Defendant contends that the trial judge erroneously allowed the admission of gruesome photographs over his objection. He argues that the content, number, and repetitive nature of the photos made them more prejudicial than probative.
Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980). Post-mortem photographs of murder victims are admissible to prove corpus delicti, to provide positive identification of the victim, to corroborate other evidence establishing cause of death, the manner in which death occurred, and the location, placement, and severity of wounds. State v. Bourque, 622 So.2d 198, 236 (La.1993).
Although some of these photographs do depict the same area of the body on more than one occasion, they are not merely repetitive or cumulative. Each photo showed a different view of the body, which was necessary to explain the nature of the injury. Moreover, the photographic evidence was limited to showing the nature and placement of the burns and presence of severe bruising. This information was crucial evidence relevant to the existence of specific intent. Therefore, the probative value of these photographs outweighed any possible prejudicial effect.
Assignment of Error No. XI is without merit.

Assignment of Error No. II
Defendant contends that the trial judge erred in denying his motion for new trial based on the ground that the state failed to present evidence sufficient to establish his guilt beyond a reasonable doubt. He argues *165 that there was insufficient evidence of his specific intent to kill.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984). In the instant case, to convict the defendant of first degree murder, the state needed to prove the killing of a human being, when the defendant had the specific intent to kill or inflict great bodily harm, and the victim was under the age of twelve years. La.R.S. 14:30(A)(5).
Though intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction. State v. Kahey, 436 So.2d 475 (La.1983). It is clear from the circumstances detailed in the trial testimony that defendant possessed the requisite intent to kill. The severity of the bruises and burns on the victim clearly indicate the intent to kill or inflict great bodily harm. Medical testimony by both the state and defense experts show that the injuries from the beatings and the scalding were of an intentional, not accidental, nature. The expert testimony and photographs showed that the victim's arms and toes were unburned and there was no evidence of splash marks, indicating that the victim was dipped in the scalding water while unconscious, rather than falling in accidentally. It was undisputed that the victim was six years old, well within the age limit of La.R.S. 14:30(A)(5).
Accordingly, there is sufficient evidence to prove beyond a reasonable doubt each element of first degree murder.
Assignment of Error No. II is without merit.

PENALTY PHASE ISSUES

Assignment of Error No. I(B)(2)
Defendant contends that the trial judge erred by allowing testimony concerning his past relationships with women. He argues that evidence of his adulterous and promiscuous past interjected an arbitrary factor into his sentencing.
At the penalty phase of a capital trial, the character and propensities of the defendant are at issue. State v. Jackson, 608 So.2d 949 (La.1992); State v. Brooks, 541 So.2d 801, 808 (La.1989). As we stated in Jackson, 608 So.2d at 953, "the usual prohibition against the prosecution's initiation of the inquiry into defendant's character is simply not applicable in the penalty phase, where the focus on character is one of the statutory means of channeling the jury's sentencing discretion."
In the instant case, we find nothing improper in the prosecutor's reference to defendant's relationships. A review of the record reveals that in most instances, the prosecutor was responding to issues raised by defendant. For example, during its cross examination of Frances Gail Hughes, the defense asked whether she saw other men while she was with defendant. The state then called Ms. Hughes on rebuttal:
Q. The other attorney was asking about any relationships you had with any other men. Did Chris have anything to do with any of these relationships?
A. Yes.
Q. How was that?
A. Chris would tell, he would tell me that in order for him to get turned on he would have to see me have sex with other men while he was present. And he would do this more than one time. But it was always with him there.
Clearly, this was a legitimate rebuttal to the line of questioning raised by the defense. Likewise, when the prosecutor questioned defendant's character witness Lyle Owens about his lack of knowledge of defendant's many marriages, it was done to impeach Owen's testimony that he had kept in contact with defendant since they first worked together in the early 1970's. While some of the testimony elicited by the state concerning defendant's past relationships (such as cohabiting with his cousin or having a relationship *166 with a 14 year old girl) did not cast him in the best light, it was not irrelevant to sentencing phase considerations, especially where defendant tried to show himself as a deeply religious man. Clearly, if the defense intends to develop a certain view of the defendant's background, the state should be allowed to elicit information to contradict these assertions. "[N]either law nor justice permits a defendant to foist a spurious reputation upon a jury because the State is so limited in its cross-examination of the character witnesses...." State v. Banks, 307 So.2d 594, 599 (La.1975). Thus, it was not improper for the state to elicit evidence concerning defendant's past relationships.
Lastly, defendant argues that during cross examination of Catherine Jorjorian, the defense mitigation expert, the prosecutor improperly characterized him as a "harem king."
While this comment might have been an overstatement, it was not totally inappropriate, based on the evidence showing the large number of relationships that defendant has had. In any event, it is highly unlikely that this brief remark contributed to the verdict in any way.
Assignment of Error No. I(B)(2) is without merit.

Assignment of Error Nos. I(B)(3) & (4)
Defendant contends that the prosecutor elicited irrelevant and prejudicial testimony during his examination of the defense's corrections expert, Dr. Dean Burke Foster. He first argues that the prosecutor implied that a life sentence does not result in life imprisonment, that defendant could be released from prison in the future because of prison overcrowding and that defendant may be sent to a medium security prison rather than to Angola.
We have held that the conditions under which a person sentenced to life imprisonment without benefit of probation, parole or suspension of sentence can be released in the future are not a proper consideration for a capital sentencing jury and should not be discussed in the jury's presence. State v. Lindsey, 404 So.2d 466 (La.1981), cert. denied, 464 U.S. 908, 104 S.Ct. 261, 78 L.Ed.2d 246 (1983). However, in State v. Glass, 455 So.2d 659 (La.1984), we determined that questions asked of a defense witness by the state during cross examination at the penalty phase did not inject an arbitrary factor into the jury's sentencing decision. Like the instant case, the defense in Glass called an expert on corrections. The prosecution asked the witness whether she knew of any lifers who had been pardoned. Noting that the defense had opened the door on the subject, we concluded that the information concerning pardons fell short of the damaging comments which mandated reversal of the capital sentences in Lindsey, and State v. Willie, 410 So.2d 1019 (La.1982).
In the instant case, it is clear that defendant, as in Glass, opened the door to a discussion on life sentences. Defendant's expert gave lengthy testimony concerning life at Angola, including a video presentation on prison life. The prosecutor's cross examination questions were in response to testimony given by the expert on direct concerning his opinion of life sentences and prison overcrowding. The prosecutor never explicitly mentioned early release in any way. While some of the prosecutor's comments may have skirted improper issues, we feel his cross examination taken as a whole does not rise to the level of reversible error.[5]
Assignment of Error Nos. I(B)(3) & (4) are without merit.

Assignment of Error No. I(B)(8)(c)
Defendant contends that the prosecutor posed questions on cross examination during the penalty phase which assumed the existence of facts which were never proven. He argues the prosecutor improperly implied that he had abused his daughter and former wives.
*167 La.Code Evid. art. 611(B) provides that a "witness may be cross-examined on any matter relevant to an issue in the case." The scope of cross examination is not limited to matters covered on direct examination. State v. Constantine, 364 So.2d 1011 (La.1978); State v. Weathers, 320 So.2d 895 (La.1975). Cross-examination of a character witness may extend to his knowledge of particular misconduct, prior arrests, or other acts relevant to the moral qualities pertinent to defendant's crime. Such inquiries expose the witness' possible lack of knowledge of defendant's acts. State v. Rault, 445 So.2d 1203, 1209 (La.1984), cert. denied, 469 U.S. 873, 105 S.Ct. 225, 83 L.Ed.2d 154 (1984). Although State v. Johnson, 389 So.2d 372 (La.1980), delineated certain safeguards regulating prosecution cross examination of character witnesses, the ultimate question is whether there was undue jury prejudice from the prosecutor's cross examination. Rault, 445 So.2d at 1209.
In the instant case, the prosecutor's cross examination did not result in undue jury prejudice since many of the facts raised during the prosecutor's cross examination had already been raised by the defense. For example, defendant complains of the prosecutor's cross examination of his daughter, Marcella Farr, as to whether defendant had hit her at her trailer. However, during the defense's direct examination, the witness was repeatedly asked whether defendant had hit her or mistreated her in any way, which she denied. Likewise, the prosecutor's cross examination of defendant's mother as to whether he abused his former wives, Mary Jane Kupp and Betty Louise Dickerson, was based on earlier defense questioning of his mother regarding whether she had seen defendant argue with Mary Jane or Betty Louise.
Defendant also argues that the prosecutor improperly implied that he was responsible for the death of one of his children.
During his cross examination of defendant's mother, the prosecutor asked whether defendant's child had died of dehydration, to which the witness responded yes. The prosecutor then asked if the child "hadn't been brought in for medical care promptly," to which the witness replied, "he had been took to the doctor."
Arguably, the prosecutor's comments concerning the child's death were improper, since no evidence had been put on concerning the death of this child. However, the comments were very brief and did not necessarily imply any involvement on defendant's part in the death of this child. Therefore, even assuming the prosecutor's comments were improper, we find no undue prejudice to defendant.
Finally, defendant argues the prosecutor improperly asked him during re-cross examination whether he stuck the victim's head in a toilet and flushed it, which defendant denied. Although this question may have been improper, defendant had already been found guilty by the jury of the first degree murder of the victim, and it is unlikely that this brief comment was unduly prejudicial.
Assignment of Error No. I(B)(8)(c) is without merit.

Assignment of Error No. VIII
Defendant contends that the prosecutor improperly elicited testimony at the penalty phase regarding unadjudicated prior offenses committed by defendant. Specifically, he argues the trial judge erred in allowing the state to call Larry Meshell and Frances Gail Hughes, to testify in rebuttal about prior batteries they received from defendant.
In the bifurcated sentencing phase of a first degree murder trial, the character of the defendant is automatically at issue, whether the defendant has placed his character at issue or not. State v. Bourque, 622 So.2d 198, 245 (La.1993); La.Code Crim.P. art. 905.2. Evidence of unadjudicated other crimes is relevant and probative evidence of the defendant's character and propensities. State v. Jackson, 608 So.2d 949, 954-56 (La.1992); State v. Brooks, 541 So.2d 801, 813 (La.1989). In Brooks, we set out a three part test for the admission of evidence of unadjudicated crimes during the sentencing phase. The Brooks test was further refined in Jackson to apply "to that [evidence] which involves violence against the person of the victim," and "to that conduct *168 for which the period of limitation for instituting prosecution had not run at the time of the indictment of the accused for the first degree murder for which he is being tried." However, Jackson indicated that the limitations applied only to the state's case-in-chief, not to rebuttal evidence:
If the defense offers evidence in the sentencing hearing which warrants the prosecutor's rebuttal with evidence of bad character, the trial judge must determine the relevance of the rebuttal evidence according to the evidence brought by the defense.
We also noted that "if the accused introduces evidence in the penalty hearing relating to his good character ... the prosecutor may introduce appropriate and relevant rebuttal evidence." Jackson, 608 So.2d at 954 n. 6. Rebuttal evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party. State v. Davis, 411 So.2d 434 (La.1982); State v. Constantine, 364 So.2d 1011 (La. 1978).
At the penalty phase, the state introduced all the evidence adduced at the guilt phase and rested. The defense then put on an extensive case consisting of fourteen witnesses, including testimony from defendant, his mother, sister, daughter, first wife, the reverend of his church, his jail minister and his former employers. Defendant's testimony went primarily to the issue of his good character as a Christian. On cross examination, the prosecutor asked defendant whether he abused his former wife, Agnes Marie Sepulvado and his former stepson, Larry Meshell.[6] On re-direct, defendant was asked whether he "abused anybody" prior to the incident that formed the basis for the present case, to which defendant replied, "[n]ot that I can recall offhand."
At the close of the defense case, the state introduced two witnesses, Larry Meshell and Frances Gail Hughes. Larry Meshell, a fourteen year old boy, testified that defendant abused him and his mother repeatedly. He stated that he had been beaten badly three times. During one of those episodes, defendant hit him with a board with enough force to break the board. Because of this abuse, Meshell and his mother fled to a shelter in Shreveport. Frances Gail Hughes initially lived with the defendant and his wife, Louise Lampkin, and then cohabited with defendant when she was seventeen years old. She testified that defendant physically abused her when she first lived with him and later, when they lived together as lovers.
We conclude that the testimony of Meshell and Hughes was relevant rebuttal testimony based on defendant's direct testimony. The testimony clearly contradicted defendant's assertion of his good character, and directly refuted defendant's statement that he could not recall whether he abused anybody prior to the present incident. Moreover, the state's presentation of these two witnesses was not so detailed as interject an arbitrary factor into the proceedings. Cf. State v. Bourque, 622 So.2d at 248.
Assignment of Error No. VIII is without merit.

Assignment of Error No. VII
Defendant contends that the state failed to present sufficient evidence to establish the aggravating circumstance that the offense was committed in an especially heinous, atrocious, or cruel manner. He argues that since the victim was unconscious at the time of his death, he was unaware of the pain of the scalding.[7]
*169 We have held that the statutory aggravating circumstance of heinousness is to be given a narrowing construction and that, to be valid, there must exist elements of torture, pitiless infliction of unnecessary pain or serious bodily abuse prior to death. See State v. Brogdon, 457 So.2d 616, 630 (La. 1984); State v. Sawyer, 422 So.2d 95 (La. 1982). We have upheld the finding of this circumstance where the victim was unconscious through part of the commission of the murder. In Sawyer, this court found that evidence that the victim was beaten, scalded, struck with a belt, and set on fire was sufficient to permit finding that homicide was committed in an especially cruel, atrocious, and heinous manner. In Sawyer, the victim was beaten and dunked in a tub of scalding water. At that point, there was a blow sufficient to render her unconscious until her death. The victim remained alive but was unconscious when she was dragged through the house, beaten with a belt, and set on fire. See also State v. Eaton, 524 So.2d 1194, 1210-11 (La.1988) (murder was committed in a heinous, atrocious, or cruel manner, even though the victim was unconscious after the initial injury); State v. Byrne, 483 So.2d 564 (La.1986) (victim was beaten in the head twelve to fifteen times with a hammer face down on a concrete floor, but was only conscious through part of the beating).
In the instant case, medical evidence demonstrated that the victim had been subjected to severe beatings which caused deep tissue bruising of his buttocks and groin area. This abuse culminated with defendant beating the victim over the head with a screwdriver until his scalp separated from his skull and he was rendered unconscious. At that point, defendant immersed the victim's body in a tub of scalding hot water, producing third degree burns over sixty percent of his body. Even with these severe injuries, defendant did not seek medical attention for the victim until three hours later, after the victim had gone into shock, began vomiting, and died from the burns. Undoubtedly, considering the nature of the abuse visited upon this six year old child over the weekend preceding his death, the boy was the victim of pitiless torture and needless infliction of pain.
Assignment of Error No. VII is without merit.

SENTENCE REVIEW
Article 1, section 20 of the Louisiana Constitution prohibits cruel, excessive, or unusual punishment. La.Code Crim.P. art. 905.9 provides that this court shall review every sentence of death to determine if it is excessive. The criteria for review are established in La.Sup.Ct.R. 28, § 1, which provides:
Every sentence of death shall be reviewed by this court to determine if it is excessive. In determining whether the sentence is excessive the court shall determine:
(a) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factors, and
(b) whether the evidence supports the jury's finding of a statutory aggravating circumstance, and
(c) whether the sentence is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

(a) PASSION, PREJUDICE OR ANY OTHER ARBITRARY FACTORS
Defendant contends that arbitrary factors were introduced into the proceedings by numerous instances of misconduct by the prosecution. We have considered these contentions earlier in the opinion and determined they do not constitute reversible error. There is no evidence that passion, prejudice or any other arbitrary factors influenced the jury in its recommendation of the death sentence.

*170 (b) STATUTORY AGGRAVATING CIRCUMSTANCES
The jury in its verdict found the following aggravating circumstances:
(a) the offense was committed in an especially heinous, atrocious or cruel manner (La.Code Crim.P. art. 905.4(A)(7));
(b) the victim was under the age of twelve years or sixty-five years of age or older. (La.Code Crim.P. art. 905.4(A)(10)).
As discussed in Assignment of Error No. VII, the evidence supports the conclusion that the offense was committed in an especially heinous, atrocious or cruel manner. Moreover, it is undisputed that the victim was under twelve years of age.

(c) PROPORTIONALITY TO THE PENALTY IMPOSED IN SIMILAR CASES
Federal constitutional law does not require a proportionality review. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Nonetheless, La.Sup. Ct.R. 28, § 4(b) provides that the district attorney shall file with this court a list of each first degree murder case tried after January 1, 1976 in the district in which sentence was imposed. The state's list reveals that twenty-six first degree murder cases were tried in the Eleventh Judicial District (consisting of Sabine and DeSoto Parishes) since January 1, 1976. Our research reveals that jurors in the Eleventh Judicial District have recommended the death penalty in three cases since January 1, 1976.[8]
Given the scarcity of comparable cases in the Sabine-DeSoto area, it is appropriate to look beyond the judicial district in which sentence was imposed and conduct the proportionality review on a state-wide basis. State v. Davis, 92-1623 (5/23/94), 637 So.2d 1012, 1030-1031.
There have been several cases in which the death penalty has been imposed in the case of the death of a small child. In State v. Brogdon, 457 So.2d 616 (La.1984), the defendant and an accomplice lured the eleven year old female victim into their car, drove her to an isolated spot, raped her repeatedly, and then tortured her by beating her with a brick, shoving sharp objects into her vagina, and cutting her with a broken bottle. In State v. Jones, 474 So.2d 919 (La.1985), the defendant abducted an eleven year old victim after breaking into her home. The defendant had been dating the child's mother. After being taken to a wooded area, the child was beaten, raped and finally strangled. In State v. Copeland, 530 So.2d 526 (La.1988), the defendant and his co-defendant, George Brooks, repeatedly raped an eleven year old boy over the course of several hours. The pair took the boy to an open field where they shot him several times. In State v. Deboue, 552 So.2d 355 (La.1989), during the course of an aggravated burglary, the defendant slashed the throats of his six and eleven years old victims allowing them to drown in their own blood.
While the instant case did not involve sexual abuse and was not committed during the course of another enumerated felony, it does not appear to be disproportionate. The instant offense is similar to the noted murders because of severity of the physical abuse, the length of time over which the abuse occurred, and the horrible nature of the lethal injury.
The Uniform Capital Sentence Report and the Capital Sentence Investigation Report indicate that defendant is a white male born on November 11, 1943. He was 48 years old at the time of the offense. Defendant has been married four times and has fathered six children, two of whom are deceased. He was born the seventh of eight children. His father is deceased, but his mother is still alive. In school, the defendant completed the *171 twelfth grade. His I.Q. is assessed at 90 in the low average range.
A psychiatric evaluation reveals that defendant is able to distinguish right from wrong, able to adhere to the right, and able to cooperate intelligently in his own defense. The examination revealed the existence of a narcissistic personality disorder, and a dependence on alcohol. He has never been treated for mental illness and has a history of alcohol abuse since age 12. Although defendant suffered from alcohol dependence, he was not under the influence at the time of the offense. Defendant has held several jobs in his lifetime, the last position as a painter and carpenter from 1984 to the time of the present offense. He has a history of mostly alcohol-related criminal offenses dating back to 1961.
After having considered the above factors, we are unable to conclude that the sentence of death in the instant case is disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
Hence, based on the above criteria, we do not consider that defendant's sentence of death constitutes cruel, excessive, or unusual punishment.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed for all purposes except that this judgment shall not serve as a condition precedent to execution as provided by La.R.S. 15:567 until (a) defendant fails to petition the United States Supreme Court timely for certiorari; (b) that Court denies his petition for certiorari; (c) having filed for and been denied certiorari, defendant fails to petition the United States Supreme Court timely, under their prevailing rules, for applying for rehearing of denial of certiorari; or (d) that Court denies his application for rehearing.
NOTES
[1] Defendant's wife, Yvonne Sepulvado, was also charged with first degree murder. Subsequently, the charge was reduced to second degree murder. She was convicted of manslaughter and sentenced to twenty-one years at hard labor, and her conviction and sentence were affirmed on appeal. State v. Sepulvado, 26,948 (La.App. 2d Cir. 5/10/95), 655 So.2d 623, writ denied, 95-1437 (La. 11/13/95), 662 So.2d 465.
[2] Defendant misnumbered the last four assignments of error in his brief to this court, since the assignments skip from XIV to XVII. To prevent confusion, this opinion will refer to the assignments according to the misnumbered enumeration.
[3] The assignments of error not discussed in this opinion do not represent reversible error and are governed by clearly established principles of law. They will be reviewed in an appendix which will not be published but will comprise part of the record in this case.
[4] Of course, the failure of the trial counsel to object may be raised as ineffective assistance of counsel on post conviction relief.
[5] Defendant also argues that the prosecutor improperly discussed the sentencing guidelines with the witness. It is clear that this topic, although irrelevant, was not prejudicial. The guidelines obviously had no effect on the instant case because the jury was presented with only two choices, death or life without benefit of parole, probation, or suspension of sentence, neither of which were or could be lessened by the guidelines.
[6] During the guilt phase, defendant had referred to his marriage to Agnes Marie and indicated they did not have any children together, but that he took care of her child, Lawrence Meshell.
[7] It is well-settled that the failure of one statutory aggravating circumstance does not invalidate others, properly found, unless introduction of evidence in support of the invalid circumstance interjects an arbitrary factor into the proceedings. State v. Martin, 93-0285 (La. 10/17/94), 645 So.2d 190, 201. Defendant argues that if the jury did erroneously find this aggravating circumstance, it would interject an arbitrary factor into the proceeding when combined with the trial judge's instruction that the jury "must weigh the mitigating factors against the aggravating circumstances that you find to be established by the evidence." However, we find that the trial judge's instruction taken as a whole is not incorrect, since it did not require the jury to balance the number of mitigating factors against the number of aggravating circumstances, as defendant suggests. Rather, the trial judge went on to state that "this weighing process is qualitative and not a quantitative analysis" and that "you could reach the decision that the standard having the fewest number could still control." This language comports with La.Code Crim.P. art. 905.3's requirement that the jury must give "consideration" to any mitigating circumstances. See State v. Jones, 474 So.2d 919, 932 (La.1985). Moreover, since we conclude that there was sufficient evidence to establish this aggravating factor, defendant's argument would be without merit in any event.
[8] These three sentences have been vacated. In State v. Sepulvado, 342 So.2d 630 (La.1977), this court reversed the sentence in light of Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), and remanded for imposition of life sentences. In State v. Bay, 529 So.2d 845 (La.1988), this court found inadequate proof of an aggravating circumstance necessary to raise the killing to the status of a capital offense. Accordingly, the court reversed and remanded for entry of judgment of guilt of second degree murder and resentencing. In State v. Maxie, 93-2158 (La. 4/10/95), 653 So.2d 526, this court reversed the defendant's conviction and sentence based upon an erroneous denial of a challenge for cause.