DANIEL L. DYSART, Judge.
1TKenan Allen was charged with La. R.S. 14:30.1, the second degree murder of Alma Blevins, and three counts of La. R.S. 14.(27)30.1, the attempted second degree murders of Meshia Davis, Kingmore Blev *879 ins and Jamiri[1] Davis. A jury found Allen guilty as charged on all counts. Allen was sentenced to serve life at hard labor, without benefits, for second degree murder and fifty years for each count of attempted second degree murder at hard labor, to run concurrently, with credit for time served.
Allen argues on appeal that there was insufficient evidence to support his convictions, that the trial court erred in allowing autopsy photographs of the victim into evidence, and that the trial court erred in not allowing a pre-trial continuance.
For the reasons that follow, we affirm the convictions and the sentences.
BACKGROUND:
Alma Blevins died on April 27, 2010, as a result of burns she sustained in a fire which took place at her apartment on Third Street in New Orleans on January 19, 2010. Her children, Meshia Davis and Kingmore Blevins, and her grandchild, Jamiri Davis, were also present when the fire took place at approximately 3 a.m., |2while they were asleep. Defendant Ken-an Allen, the boyfriend of Alma Blevins, was charged with intentionally starting the fire, which caused Alma Blevins’ death.
Meshia Davis was nineteen-years-old at the time of trial. She testified that she moved to New Orleans on January 1, 2010 from Jackson, Mississippi, and was living with her mother; her brother, Kingmore Blevins; her son, Jamiri Davis; and her mother’s friend, “Dwayne[2],” on the date of the fire.
Ms. Davis testified that on the evening of January 18, 2010, her mother and Dwayne got into several arguments, one concerning Dwayne talking on the phone to his ex-wife. Alma Blevins and her children asked Dwayne to leave. Ms. Davis testified that immediately after Dwayne left, a brick was thrown through the front window of the apartment. Ms. Davis and her brother, Kingmore, stepped outside and saw Allen running down the street, but did not call the police. Kingmore replaced the screen in the window. Ms. Davis testified that Dwayne called her mother later that night and threatened to tell the New Orleans Police that Alma Blevins was in violation of her parole. The police came to the apartment later that evening, asked Alma Blevins for her identification, and left. Ms. Davis stated that everyone went to bed after the police left. Ms. Davis slept in a room with her mother and her son, while her brother, Kingmore, slept in the front living room.
Ms. Davis testified that she was awakened by a “whoosh” sound, similar to when a barbeque pit is lit. She looked up to see her mother on fire at the foot of her own bed and “Dwayne” standing in the bedroom doorway, who then fled the house. She testified that her mother was completely covered in flames and that she | ¡¡saw Kenan Allen with a look on his face as that of “I want you to burn. Burn.” She related that Allen fled the apartment as the flames spread quickly — seemingly originating from a trail of flames on the floor. Ms. Davis removed her child from the burning apartment. Ms. Davis testified that her mother managed to get out of the apartment, where Kingmore extinguished the fire in her hair. A neighbor, *880 “Ms. Sharon,” placed a robe on her mother. Ms. Davis suffered minor burns.
Kingmore Blevins, who was seventeen-years-old at the time of trial, testified that he and his mother, Alma Blevins, moved to the subject apartment in New Orleans, and that Dwayne moved in with them. He testified that his mother and Dwayne argued on the evening of January 18, 2010, and that once they initially stopped arguing, Dwayne received a phone call, and another argument ensued between his mother and Dwayne. Everyone told Dwayne to leave the apartment. Kingmore Blevins testified that after Dwayne left, a window in the front of the apartment was broken from the outside by either a brick or piece of asphalt. Kingmore and his sister exited the apartment and saw Dwayne running down the street. A neighbor, “Ms. Sharon,” called maintenance and was told the window could not be fixed until morning, so Kingmore Blevins placed the screen back in the window. He then went to sleep and was awakened by his mother rolling on his bed to “put herself out” as she was on fire. He stated that once they ran out of the apartment, he took his shirt off and used it to put the fire out in his mother’s hair. He recalled “drips” of fire on the ground going out of the back door of the apartment like a “pattern.” He testified that the next time he saw Dwayne was later that evening in a police car outside of the burning apartment complex.
Sharon Smith testified that she was a tenant of the apartment complex that caught fire the night of January 19, 2010, and that she lived next door to Alma [4Blevins. Ms. Smith identified Kenan Allen at trial and testified that she believed Men had been living at Alma Blevins’ apartment for about two months. She testified that on the night of the fire, she heard Alma Blevins and Kenan Allen arguing. Ms. Smith testified that she heard Alma Blevins’ window shatter at approximately 9 p.m., and that she had bricks thrown through two windows in her apartment around 11 p.m. and again at 1 a.m. She called the police the first time, but told the officer that she did not know the name of the person who threw the brick. After the 1 a.m. incident, her nephew and his girlfriend apprehended Allen. She stated that Allen apologized for throwing the bricks through her window, and explained that he thought it was Alma Blevins’ window. Allen offered to pay for the damages.
At approximately 3 a.m., Ms. Smith was awakened by Meisha Davis beating on her door and screaming about the fire. As Ms. Smith left her apartment, she saw Alma Blevins descending the stairs while still ablaze. She described Alma Blevins removing her burning nightgown, and said that she provided Alma with a robe.
Ashley Fain, a paramedic for the City of New Orleans, testified that on January 19, 2010, she responded to a two alarm fire on Third Street in New Orleans. Upon arriving at the scene, Alma Blevins was standing in front of the complex with burns over her entire body. Alma Blevins told her that she woke up on fire. Ms. Fain testified that Ms. Blevins’ had burns to 70-80 percent of her body, and that after she transported Ms. Blevins to the trauma unit at University Hospital, she did not believe she would survive.
Harry Mendoza was a police captain with the NOPD, assigned to the New Orleans Fire Department in January of 2010. He testified that he was called out to 15the fire on Third Street in the early morning hours of January 19, 2010, and upon arrival saw damage to a second floor apartment that had traveled to the third floor. Captain Mendoza called Alcohol Fire and Tobacco unit (“ATF”) agents, Dan Hebert and Chad Edmonds, to investigate the fire. *881 Captain Mendoza testified that he interviewed Sharon Smith at the scene and was made aware of an incident between Ms. Blevins and Allen. From that interview, he determined that “Dwayne Maxie” was a suspect.
The ATF agents were able to determine through use of the ATF’s computer system that Dwayne Maxie’s real name was Kenan Allen, and were able to obtain his photograph. Captain Mendoza also learned that Allen frequented the area of Oretha Castle Haley and Clio streets. He and ATF Agent Hebert went to that location, apprehended Allen, and transported him back to the scene. As they arrived, several people surrounded the police car and angrily shouted that Allen “was the guy” who started the fire. Sharon Smith positively identified Allen at the scene.
Captain Mendoza testified that during the ride back to the scene, Allen attempted to establish an alibi by telling the officers that he was in a motel on Claiborne Avenue in New Orleans at the time the fire occurred; however, after determining this statement was false, Captain Mendoza charged Allen with aggravated arson.
Daniel Hebert, a special agent with the ATF for twenty-four years, testified that he and Chad Edmonds, another ATF agent, investigated the fire on Third Street on January 19, 2010, to determine the possible origin of the fire and how it spread. Based on his observations, Agent Hebert determined that the fire was 1 fiintentionally set with a liquid accelerant. Once Agent Hebert established the cause of the fire, he accompanied Captain Mendoza to look for the suspect.
Agent Hebert testified that he and Captain Mendoza found Allen by use of the photograph they had obtained from a computer search and a description of his clothes they had obtained from witnesses on the scene. They arrested Allen, placed him in the back of Captain Mendoza’s police car, and Agent Hebert read Allen his Miranda warnings. Agent Hebert stated that Allen attempted to give an alibi once they told him about the fire, but changed his story several times.
Detective Christopher Harris testified that he was the lead detective in the homicide investigation. He testified that he was called to the coroner’s office upon Alma Blevins’ death on April 27, 2010. He received the reports from both ATF and the New Orleans Police Department concerning the events of January 19, 2010, and used the information gathered to classify the death as a homicide.
Dr. Michael Defatta, a forensic pathologist, testified that he performed the autopsy on Alma Blevins, and determined that the deceased sustained deep thermo injuries to approximately ninety percent of her body. He identified photos of the burned body for the jury. He testified that although the primary cause of death was classified as sepsis, which caused pericar-ditis, the death was directly related to complications from the severe burns suffered by Ms. Blevins.
17DISCUSSION:[3]
A. Insufficiency of the Evidence
In his first assignment of error, Allen argues that the trial court erred in *882 finding that there was sufficient evidence to support his convictions, specifically that the State did not exclude every reasonable hypothesis that Allen could be innocent. Allen asserts that there were no witnesses who testified that they actually saw him light the fire or heard him threaten Alma Blevins. He maintains that the State failed to present any physical evidence to link him to the fire, such as accelerant on his clothes, fingerprints or evidence that he had purchased gasoline. He argues that even if one were to assume that the State had presented some sort of circumstantial evidence, one cannot doubt that the State failed to exclude every reasonable hypothesis of innocence and that, accordingly, his convictions must be reversed.
Allen argues that the Due Process Clause of the First Amendment requires that the State prove every element of the crime accused beyond a reasonable doubt, and relies on this Court’s reversal of the trial court in State v. Woodfork, 99-0859 (La.App. 4 Cir. 5/17/00), 764 So.2d 132. In Woodfork, this Court found that the evidence presented was insufficient to convict, however, the facts in Woodfork are | ^markedly different from the instant case. In Woodfork, the defendant was identified by the victim some three months after the attack, whereas in this instant matter Ken-an Allen was known to and immediately identified by several witnesses, including Meshia Davis and Sharon Smith.
Allen also relies on La. R.S. 15:438[4] in conjunction with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), (discussed infra), and argues that the trial court was required to look at all of the evidence, both direct and circumstantial, to prove him guilty.
Allen maintains that the State failed to prove that he had the specific intent to kill Alma Blevins or inflict great bodily harm as required by La. R.S. 14:30.1, and argues that Meshia Davis’s testimony that she saw him in the doorway after her mother was set on fire was not corroborated by any other witness. He points out that Kingston Blevins testified that Allen did not have a key to the apartment, and there was no evidence that he broke into the apartment. He suggests that these two factors created reasonable doubt sufficient for a not guilty verdict. Lastly, Allen argues that, assuming Sharon Smith’s nephew did confront him about throwing bricks through her window, if he were angered enough to set a person on fire, he would not have offered to pay Sharon Smith for damage to her property.
The State maintains that Allen’s identification at trial by Meisha Davis, who knew him, coupled with the witnesses’ explanation of a motive, were enough to Rprove Allen guilty beyond a reasonable doubt. The State argues that Allen offered no rebuttal to the expert testimony that the fire was arson, nor did he offer any evi- *883 denee to rebut Meshia Davis’s testimony that she awoke to the sound of combustion and found Kenan Allen standing in the doorway of her mother’s bedroom.
The standard of appellate review of a sufficiency of the evidence claim was set forth in the United States Supreme Court decision of Jackson v. Virginia, 448 U.S. 307, 318, 99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560 (1979), which explained that “the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.” Louisiana courts have consistently applied the Jackson standard of review in assessing sufficiency of the evidence claims. This Court has repeatedly stated that, in discharging its duty to review the claims under the Jackson standard, an appellate court must not only look to whether “the record " contains evidence that tends to support each fact necessary to constitute the crime,” but must “consider the record as a whole.” See State v. Danastasio, 12-1157, p. 7 (La.App. 4 Cir. 1/30/14), 133 So.3d 224, 229, quoting State v. Huckabay, 00-1082, p. 32 (La.App. 4 Cir. 2/6/02), 809 So.2d 1093, 1111 (internal citations omitted); State v. Taylor, 13-0265, p. 12 (La.App. 4 Cir. 12/18/13), 130 So.3d 439, 446; State v. Kirk, 11-1218, pp. 5-6 (La.App. 4 Cir. 8/8/12), 98 So.3d 934, 939, writ denied, 12-2023 (La.2/8/13), 108 So.3d 80.
At trial, the testimony of the witnesses established that Allen and Alma Blevins had argued several times the night of the fire, and that Allen came back to the apartment to intimidate the victim by breaking her window. Allen’s argument | inthat he did not have a key to the apartment was offset by the State’s evidence that he could have gained entry to the apartment through the window on which Kingston Blevins had placed the screen earlier that evening (the screen was on the ground next to the window when the police arrived). Most compelling was Meshia Davis’ testimony that she actually saw him standing in the doorway of her mother’s bedroom at the time the fire erupted. Although there was testimony by the desk clerk of a nearby motel that Allen had registered at the motel the night of the incident, the same witness also testified that she had ordered him to leave well before the time of the fire. There was no evidence introduced that placed Allen elsewhere at the time the fire was set. Ms. Smith (the neighbor), Captain Mendoza, and Agent Hebert also testified that once Allen was returned to the scene of the crime, numerous individuals pointed him out as “that guy,” indicating he was the one who had set the fire.
It is the jury’s province to weigh the evidence and the credibility of the witnesses, and its finding will not be disturbed absent an abuse of discretion. State v. Barnes, 11-1421 (La.App. 4 Cir. 9/19/12), 100 So.3d 926. Further, after our review of the above evidence in the light most favorable to the prosecution, we find there was sufficient evidence for the jury to determine beyond a reasonable doubt that Allen committed second degree murder and attempted second degree murder. We find no merit to this assignment of error.
B. Admission of Autopsy Photographs
In a second assignment of error, Allen argues that the trial court abused its discretion in allowing the State to introduce, over objections from the defense, three gruesome autopsy photographs of the victim’s body.
*884 |n-Allen submitted a motion in limine arguing that the introduction of the autopsy photographs would have a prejudicial effect on the jury. The record indicates that the State sought to introduce twenty-three photographs of Alma Blevins’ burned body. Upon Allen’s objection, the trial court ruled that only three 8"- x 10" photographs and one enlarged 3' x 3' photograph could be used during trial. It was agreed that all photographs could be used during the coroner’s examination, but not published to the jury.
In State v. Sepulvado, 93-2692, p. 6 (La.4/8/96), 672 So.2d 158, 164, the Supreme Court addressed the issue of prejudicial photographs, and held:
Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing or place depicted. State v. Landry, 388 So.2d 699 (La.1980). Post-mortem photographs of murder victims are admissible to prove corpus delicti, to provide positive identification of the victim, to corroborate other evidence establishing cause of death, the manner in which death occurred, and the location, placement, and severity of wounds. State v. Bourque, 622 So.2d 198, 236 (La.1993).
Sepulvado, p. 6, 672 So.2d at 164. Sepulvado involved the murder of a six-year-old boy who had been struck in the head with a screwdriver and then immersed in scalding water by his stepfather. The Supreme Court affirmed the trial court’s decision to allow the introduction of post-mortem photographs of the child’s injuries, finding that the photographs were necessary to explain the nature of the injury. The photographs were not repetitive or cumulative, and their probative value outweighed any possible prejudicial effect.
In a more recent case, the Supreme Court set forth that “[pjhotographic evidence will be admitted unless it is so gruesome that it overwhelms jurors’ reason and leads them to convict without sufficient other 112evidence ... The admission of ‘gruesome’ photographs is not reversible error unless it is clear that their probative value is substantially outweighed by their prejudicial effect.” State v. Magee, 11-0574, p. 54-55 (La.9/28/12), 103 So.3d 285, 323 (internal citations omitted.).
Allen maintains that the reason the jury convicted him was because the photos of Alma Blevins were particularly horrible and prejudicial and should have been excluded. In support he cites State v. Morns, 245 La. 175, 157 So.2d 728 (1963), wherein the trial court allowed publication of the step-by-step progression of an autopsy. The Louisiana Supreme Court reversed and remanded the ease for a new trial, finding that photographs of the coroner holding up photographs of individual organs of the deceased were more prejudicial than probative.
The State maintains that the trial court did not abuse its discretion in allowing photographs of the victim’s burned body into evidence, citing State v. Sepulvado, infra. The State argues that while the photos were graphic in the instant case, it was necessary to introduce the photographs to show the jury the extent of the injuries that caused Alma Blevins’ demise, particularly in light of Kenan Allen’s questioning of the cause of death. The State points out that photographs of the victim were not taken at the scene, as the police were more interested in having her quickly transported to the hospital, and, thus, the autopsy photographs were the only means to prove for the jury the extent of her fatal wounds.
Here, the photographs depicted the injuries suffered by Alma Blevins and the condition and location of those injuries on her body. It is apparent from the record that the trial court in this case engaged in *885 a thoughtful and detailed examination of each photograph and excluded the majority of the photographs the State sought to introduce.
|iaWe find that the trial court did not abuse its discretion in allowing into evidence a limited number of photographs to prove the extent of the "victim’s injuries and the cause of death.
We find no merit to this assignment of error.
C. Denial of Motion to Continue
In his last assignment of error, Allen argues that he was denied a fair trial as the trial court abused its discretion in denying his motion for continuance. Allen’s counsel sought additional time to review lengthy medical records. He asserts that the State gave him the medical records on November 27, 2012, just prior to the December 4, 2012 trial, and argues that because the victim died two months after the fire, he should have been given additional time to locate an expert to determine her cause of death (which he asserted at the time may have been due to hospital negligence).
The record indicates that although the defense moved for a continuance on November 29, 2012, arguing that it needed time to hire an expert, at the beginning of trial on December 4, 2012, defense counsel stated: “after many hours of review I’ve done on this case as well as the medical records, ..., and consulting with medical personnel, there will be no contestation of the cause of death.”
In State v. Manning, 20-1982, p. 30 (La.10/19/04), 885 So.2d 1044, 1077, the Supreme Court stated:
We have consistently held that the decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. State v. Bourque, 622 So.2d 198 at 225 (La.1993); La.C.Cr.P. art. 712. In addition, this Court generally declines to reverse convictions even on a showing of an improper denial of a motion for a continuance absent a showing of specific luprejudice. Bourque, 622 So.2d at 225; State v. Champion, 412 So.2d 1048, 1051 (La.1982).[5]
Here, defense counsel’s statements at the commencement of trial rendered moot his reasons for a continuance. Also, defense counsel had the opportunity to cross-examine the State’s forensic expert, but did not do so, instead opting to stipulate that the victim’s cause of death was a homicide. Accordingly, we find Allen has failed to make a showing of abuse of discretion or of specific prejudice to his rights, which would entitle him to relief. See State v. Holmes, 590 So.2d 834 (La.App. 4 Cir.1991). We find this assignment is without merit.
Accordingly, for all of the reasons set forth herein, we affirm the convictions and sentences of Kenan Allen.
AFFIRMED.

. The bill of indictment indicates that this victim’s name is "Jamuary.” However, the child’s mother testified that his name is Jami-ri.

. The witnesses refer to Kenan Allen as "Dwayne." The record indicates that the defendant's legal name is Kenan Allen, but that he used the aliases of Dwayne Maxey, Larry Moore, Kewan Allen, Ken Jones and Larry Allen.

. A review of the record for errors patent reveals that the trial court failed to include that the sentences for violation of La. R.S. 14(27)30.1, three counts of attempted second-degree murder, were without benefits. The law mandates that the sentence be served without benefit of parole, probation or suspension of sentence. La. R.S. 15:301.1(A) provides that in instances where the statutory restrictions are not recited at sentencing, they are included in the sentence given, regardless of whether or not they are imposed by the sentencing court.
*882 Furthermore in State v. Williams, 00-1725 (La. 11/28/01), 800 So.2d 790, the Louisiana Supreme Court ruled that paragraph A of the statute self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this Court need take no action to correct the trial court's failure to specify that the defendant's sentences be served without benefit of parole, probation or suspension of sentence. The correction is statutorily effected. State v. Phillips, 03-0304 (La.App. 4 Cir. 7/23/03), 853 So.2d 675.

. La. R.S. 15:438 states:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.

. See also State v. Holmes, 590 So.2d 834 (La.App. 4 Cir.1991).